[Civ. No. 3856.   Second Appellate District, Division Two.—June 30, 1922.]

## HELEN HUGHES, a Minor, etc., Appellant, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Respondent.

[1] Negligence—Action for Damages—Excessive Speed of Electric Train—Evidence—Instructions.—In an action for damages for personal injuries sustained as the result of an interurban electric train accident at a street intersection, the plaintiff is not entitled to an instruction that, as a matter of law, the defendant was negligent in the operation of electric cars concerned in the accident resulting in plaintiff's injuries, because of the undisputed facts that plaintiff's companion, who was leading plaintiff, a minor, by the hand and who alone was struck directly by the moving cars, was thrown at least forty-three feet by the impact and that the motorman in charge of the train, with all the braking power at his command, could only bring the cars to a stop at a distance of .255 feet from the point at which she was struck, where the evidence shows that defendant's train, consisting of an electric motor and two freight-cars, was at the time proceeding downgrade, down the middle of a broad thoroughfare along which de-

fendant had a private right of way, except across street intersections, in which ran its double tracks, with ties and rails exposed, and there is some evidence that the train was running at as low a rate of speed as fifteen miles an hour.

[2] Id.—Instructions—Complaint by Party Requesting.—One may not complain of instructions given to the jury at his request, or to instructions given which pertain to a legal question which he himself has asked the trial judge to submit to the jury.

[3] Id.—Consolidation of Actions for Trial—Effect of Stipulation—Instructions—Waiver of Objections.—Where two causes of action are intimately related, both having arisen out of the same electric railway accident, and both plaintiffs are represented by the same counsel, the latter, by their stipulation that the two cases might be tried together, subject the case of each plaintiff to all vicissitudes which might attend the consideration by the jury of the case of the other, and where they fail to take the proper steps to protect the rights of either, in the event of an instructed verdict against the other, they may not on appeal urge the objection that certain of the instructions were only applicable to the other case which did not get to the jury.

APPEAL from a judgment of the Superior Court of Los Angeles County. Louis W. Myers, Judge. Affirmed.

The facts are stated in the opinion of the court.

Alfred H. McAdoo and Wm. J. Carr for Appellant.

Frank Karr, R. C. Gortner and W. R. Millar for Respondent.

WORKS, J.—This is an action for the recovery of damages for personal injuries suffered by a child under five years of age, who sues by her guardian *ad litem*. Under stipulation the cause was tried together with an action for damages for the death of one Kate Johnston, an adult who lost her life in the same accident in which plaintiff in this cause was injured. The trial was by a jury. In their main circumstances the two causes of action were intimately related, as the plaintiff child was being led by the hand by the decedent when the accident occurred. The trial judge instructed the jury to render verdict in favor of defendant in the Johnston case on account of the contributory negligence of the deceased, and that outcome of course followed. As a result of this instruction, then, the case of

the minor was alone left to the actual deliberation of the jury, and a verdict was returned favorable to defendant in that action also. Both plaintiffs were represented by the same counsel, but no appeal was prosecuted from the judgment in the Johnston case. Plaintiff minor, however, appeals from the judgment entered against her.

[1] Appellant contends that she was entitled to have the jury instructed that, as a matter of law, respondent was negligent in the operation of its interurban electric cars which were concerned in the accident resulting in her injuries, which instruction was refused by the trial court. As a basis for the discussion of this question appellant cites *Rudd* v. *Byrnes,* 156 Cal. 636 [20 Ann. Cas. 124, 26 L. R. A. (N. S.) 134, 105 Pac. 957], to the effect that although "the question of negligence is ordinarily one to be determined by the jury, yet where the facts are undisputed, and no inference but that of negligence can be drawn from them, the court may determine that negligence is shown as matter of law." Appellant insists that the present case is within this rule, for the reason that the uncontradicted evidence shows that Miss Johnston, who was alone struck directly by the moving cars, was thrown at least forty-three feet by the impact, and that the motorman in charge of the train could only, with all the braking power at his command, bring the cars to a stop at a distance of 255 feet from the point at which she was struck. From this it is argued that the evidence shows conclusively that the train was moving at an unsafe rate of speed, and *Young* v. *Atlantic Ave. R. Co.,* 10 Misc. Rep. 541 [31 N. Y. Supp. 441], is cited as establishing the rule that courts will take judicial knowledge of the fact that "a trolley car" moving "at an ordinary safe rate of speed can be stopped, emergency or no emergency, in a much shorter space" than 102 feet, the distance which was of interest in that case. For various reasons the opinion cited can be of no value here. There the damage was caused by a single trolley car, apparently an ordinary street-car. Here Miss Johnston was struck by an interurban freight train composed of an electric motor, or locomotive, and two cars. There the trolley car was proceeding up a "very steep" grade. Here the train was running on a downgrade. There it was shown by direct testimony that "the car was moving very

rapidly." Here there was some testimony that the train was running at as low a rate of speed as fifteen miles an hour. It is true that the present case is like the case cited in that the accident occurred at a street intersection in each. There the car was being operated, apparently, along an ordinary city street. Here, however, the train was proceeding down the middle of a broad thoroughfare along which respondent had a private right of way, except across street intersections, in which ran its double tracks, with ties and rails exposed "like a steam railroad in the open country," they being thus a prominent feature of the landscape. Under all these circumstances we cannot say that the train was proceeding at an unsafe rate of speed or that the motorman in charge did not have his train under reasonable control as it approached the intersection at which occurred the tragedy out of which this litigation arose. The instruction was properly refused.

Following immediately upon the discussion of the question of which we have just made disposition, and as a preliminary to the consideration of the next point, it is to be noted that the motorman in charge of the train did not attempt to exercise his control over it by an application of his emergency brakes until within thirty-five feet of the place at which the accident occurred, his ordinary brakes being already "on" in order to keep the train "from increasing speed." This failure to apply the emergency brakes was due to the contributory negligence of Miss Johnston, which caused the trial judge to direct the jury to render a verdict for defendant in the case instituted to recover damages for her death. We need not recite the facts going to show that Miss Johnston was guilty of contributory negligence. It is enough to say that counsel for appellant, who were also counsel for plaintiff in the Johnston case, do not question the propriety of the instruction which was based upon that negligence. They do, however, object to certain instructions which went to the jury and which dealt with the acts of Miss Johnston as affecting the rights of appellant in the premises, the case of the latter being the only one left to the jury after the instruction directing the jury to find for defendant in the Johnston case. The instructions to which objection is now made were several in number, but their general nature may be shown

by a reference to the one of them which appellant evidently regards as among the most drastic and injurious of the lot. It is as follows: "The railroad track is itself a warning of danger to anyone of the age of discretion, and any such person in or about or seeking to cross a railroad track or tracks must give to himself or herself, if possible, an opportunity to know whether or not a car is approaching on any or either of such tracks, and must not only listen, but must also look carefully both before she crosses and as she crosses, and must see and heed that which, by the exercise of such care, can be seen and heard on said tracks or any of them." In her assault upon these various instructions appellant calls attention to the rule to the effect that the contributory negligence of Miss Johnston was not imputable to her, a rule which was recognized by the trial judge, as he instructed the jury according to its mandate. Appellant says that after the giving of the instruction which disposed of the Johnston case there was left for the jury under this rule no question involving the law of contributory negligence. Respondent contends, however, that the questioned instructions are to be viewed as statements of rules of law bearing upon the duty of the motorman under the circumstances which confronted him, in view of the fact that Miss Johnston held appellant by the hand during the commission of the acts which, according to the instruction given by the trial judge, amounted to negligence on her part. We need not determine whether this view of respondent is correct.

Counsel for appellant, who were at the time counsel for plaintiff in the Johnston case, requested the trial judge to give to the jury instructions covering the same questions of law as are embraced in the instruction above quoted and in the others to which appellant makes objection. One of the instructions thus requested was given by the judge with modifications which are immaterial to the point now under discussion. This instruction, as presented to the jury, read, the italics being ours: "An interurban electric railway, such as the evidence shows the defendant to be, occupies a status somewhat between that of a steam railroad and an ordinary street railway. *Whether the rules of caution resting upon a pedestrian about to cross the tracks of an interurban electric railroad are those appli-*

*cable to the crossing of the tracks of a steam railroad or the tracks of a street railway, depends upon the circumstances under which the interurban railroad is operated.* Where it is operated under conditions substantially similar to those under which a steam railroad is usually operated *then the same rules of caution* apply in the case of one as the other. But where the conditions under which the interurban railway is operated approximate those under which a street railway is usually operated, then *the rules of caution* applicable to the latter obtain. Here the defendant's tracks run along a private right of way immediately between two parallel roadways which constitute a traveled thoroughfare in the city of Glendale. At the intersection of Park Avenue and such thoroughfare, on each side of the thoroughfare, were stores. Foot and vehicle traffic passed over the tracks at Park Avenue. Freight or work trains were at times run along defendant's tracks at this place. Passenger trains which traveled the tracks of the defendant at frequent intervals sometimes stopped on signal at Park Avenue, to take on passengers and sometimes did not. *Under such circumstances, a pedestrian crossing the tracks of the defendant at Park Avenue is not to be held to that high amount of care which is required of him when crossing the tracks of an ordinary steam railroad running through the country, on which heavy trains of cars are moved at a high rate of speed and cannot be quickly stopped or controlled, but must exercise a greater amount of care than in crossing an ordinary street railway track. A pedestrian crossing the tracks at this point was chargeable with exercising such care as was reasonable under all the conditions and circumstances.*" [2] It is a well-established rule, finding expression in many cases, that one may not complain of instructions given to a jury at his request (*Emerson* v. *County of Santa Clara,* 40 Cal. 543), or to instructions given which pertain to a legal question which he himself has asked the trial judge to submit to the jury (38 Cyc. 1788, 1789). Under all the circumstances it is plain to us that this rule applies in the present instance. [3] By their stipulation that the two cases might be tried together counsel subjected the case of appellant to all the vicissitudes which might attend the consideration by the jury of the Johnston case, granting, which counsel must have believed to be true, that the latter case would get

to the jury. In requesting instructions counsel for appellant could have saved appellant's right to object to the instructions now assailed by taking any one of at least three courses: 1. They could have specified their requested instructions as bearing respectively upon either appellant's case or the Johnston case. If both cases had gone to the jury that body could have applied the instructions accordingly. If the instructions had been so framed, also, the trial judge would have been charged, in directing a verdict in the Johnston case, with the duty of refraining from giving to the jury all instructions requested as bearing alone on appellant's case, provided that as a matter of law they actually had no application to that case. 2. In requesting the various instructions counsel could have indicated that, in the event of a direction to find for defendant in the Johnston case, they desired certain indicated instructions, that is, those in their judgment not applying to appellant's case, not to go to the jury at all. Considering the state of the evidence, counsel might well have anticipated such a termination of the Johnston case. 3. When the jury were given the direction as to the Johnston case, counsel might have arisen in their place and have withdrawn any or all of the instructions offered by them. This direction was given before the judge began the reading of what may be termed the instructions proper, including those given at appellant's request and those now assailed. Counsel having taken neither of these three courses, nor any other course which might operate as the equivalent of either of them, appellant may not now urge objection to any of the instructions now questioned by her.

Appellant contends that the instructions of the court as to proximate cause were confusing and erroneous "because to the jury they could only mean that the jury must find the negligence of defendant the sole and exclusive proximate cause to entitle plaintiff to recovery." We have examined the instructions thus attacked and find no error in them, especially in view of the fact that appellant requested no instructions under which the jury might have determined that appellant was injured because of the concurring negligence of Miss Johnston and respondent.

Judgment affirmed.

Finlayson, P. J., and Craig, J., concurred.