[Civ. No. 2288.  Fourth Appellate District.—February 7, 1940.]

ERVIN BENDER, Respondent, v. JOHN P. PERRY et al., Appellants.

Borton, Petrini, Conron & Borton and J. K. Lilly for Appellants.

Brittan & Mack and Jack W. Bradley for Respondent.

THOMSON, J., *pro tem.*—This is an appeal from a judgment based upon the verdict of a jury in favor of plaintiff and respondent in an action for damages for personal injuries, property damage and loss of earnings arising out of an intersection collision which occurred on January 2, 1938, in Kern County.

At the time of the collision defendant Perry was driving a ton and a half Ford truck owned by defendant Cowart, in the course of his employment, east on Panama Lane. The plaintiff was driving his Ford sedan south on Oak Street, sometimes called Wible Road. Oak Street has pavement 25 feet wide and Panama Lane has pavement 18 feet wide. The collision of these two vehicles occurred in the intersection of the paved portions of the highways. Plaintiff testified that he was driving about 48 miles per hour as he approached the intersection. The evidence showed that defendant Perry was driving between 30 and 35 miles per hour up to a point about 200 feet from the intersection when he slowed down. Perry and his passenger, Polf, both testified that Perry stopped the truck at the boulevard stop sign near the southwest corner of the intersection. Plaintiff testified that when he first noticed defendants' truck it was about 150 feet west of the intersection, traveling about 30 miles per hour, and that it slowed to about 10 miles per hour; that it appeared as if defendant were going to stop, but, instead of stopping the truck, "came shooting out into the road, into the center of the road" when plaintiff was "right at the intersection" and within 50 feet of it. A witness who was working in a field at the southwest corner of the intersection testified that he saw the truck and it did not stop for the stop sign. Defendant Perry testified that he did not see plaintiff's car until he was in the center of the intersection, and then his passenger said "Look out", but then he did not have time to do anything to avoid the collision. The corner was not an obstructed intersection. It is open on three sides, including the side involved in this case. Defendant Perry testified that from a point 200 feet back from the intersection

there was a view north on Oak Street from 800 to 1,000 feet. On deposition he previously stated he could see in that direction for almost a quarter of a mile.

█ Appellants present two main assignments of error. In the first, appellants contend that the court erred in not giving an instruction offered by defendants in regard to the right of way as provided by section 550, subdivisions (a) and (b), of the Vehicle Code, which relate to intersections other than on through highways; and also that the court should not have given the instruction offered by plaintiff defining a "through highway". They urge in the second assignment of error that the verdict was contrary to the evidence and that contributory negligence appears as a matter of law.

Plaintiff's opening statement at the trial indicated that his charge of negligence against defendants was based in part upon the claim that Oak Street was a "through highway" at its intersection with Panama Lane and that, consequently, defendant Perry was required to stop his truck at a stop sign near the entrance to the intersection. Defendants offered to the court two instructions on the subject of right of way, one based on section 552 of the Vehicle Code defining the rules relating to the right of way at through highway intersections, and the other based on section 550 of the Vehicle Code setting forth the rules on the right of way applicable to ordinary or nonthrough highway intersections. All references to the Vehicle Code herein relate to the Vehicle Code, which was in effect at the time of the accident. The defendants' instruction relating to the right of way at through intersections was given by the court, and the other was refused. No proof was offered at the trial to show whether or not the board of supervisors of Kern County declared Oak Street to be a through highway or authorized the erection of boulevard stop signs at the intersection as provided in section 471, subdivision (b), of the Vehicle Code, but the uncontradicted evidence is to the effect that such signs were there at the time of the collision. Appellants contend, therefore, that, under the state of the evidence, the trial court should have deleted the instruction dealing with the subject of right of way at through highway intersections, there being no evidence upon which the existence of a through highway could be found. The record discloses that throughout the trial it was the theory of plain-

tiff that defendants' truck did not stop at the stop sign but merely slowed down and then shot into the intersection immediately in front of plaintiff, and thus caused the accident. We believe the record also discloses that the defendants, throughout the trial, were proceeding upon the theory that defendant Perry (driver of the Ford truck) actually stopped at the stop sign, looked for traffic on Oak Street and that plaintiff's car was not yet within Perry's line of vision when Perry entered the intersection, but that plaintiff's automobile came so fast that Perry was struck before he could get across the intersection.

Counsel for defendants made an opening statement immediately following plaintiff's opening statement, in which defendants' counsel said in part: " . . . now, on the day in question Mr. Perry drove this truck as I have described it up to this intersection, stopped here at the boulevard stop sign, looked in both directions, first looking north, then looking south. As he looked north he looked up the road a distance of some 900 feet or so, about 300 yards, that in that distance there were no automobiles of any kind approaching the road, the intersection. . . . Now, with respect to Mr. Bender's car we will prove that he was driving down Oak street at a speed in excess of 65 miles per hour, he was coming down that road like a cannon ball, that he was not within Mr. Perry's line of vision at the time he looked across the road, but he came so fast that he reached the intersection, struck him anyhow before Mr. Perry could get across the road . . . " A diagram was used to illustrate testimony. It showed the stop signs. In objecting to a question, one of defendants' counsel said: "There is one further objection, there is no proper foundation laid here for asking this question because of the fact it hasn't been shown exactly how many feet from the boulevard stop sign that this car, this truck of the defendant did stop. In other words, the question has been asked if I recall the exact terminology 'if a car was stopped at the boulevard stop sign'. There is a great deal of discretion as far as a motorist goes, stopping at a boulevard stop sign, you don't have to stop the front wheel where the sign post is, don't have to stop exactly with the hind wheels where the sign post is. In other words, you come up to that sign post, you might stop ten feet before the stop, the boulevard stop, it would still be within the law, because coming to a stop within a reasonable distance of that

boulevard stop and with that fence going down the highway to the north on Oak street would make a great deal of difference as to visibility, exactly where that truck was stopped.'' A written statement signed by E. C. Polf, the passenger in the Ford truck, was received in evidence without objection. Part of it is as follows: ''We were going east on Panama road. There is a boulevard stop at the entrance onto Oak street. We came to a complete stop at the boulevard stop sign.'' An officer of the Highway Patrol was called as a witness for defendants, and one of the attorneys for defendants examined him as follows: ''Q. I will label that 'R–1.' Now you recall that this intersection is a boulevard stop intersection, officer? A. Yes, sir. Q. And boulevard stops are—running east and west would these small circular marks on the east and west corner of Panama lane correctly represent those boulevard stops? A. They would represent them, yes.'' The record is devoid of any indication that either party at any time during the trial departed from the theory that Oak Street was a through highway and that the intersection was a through highway intersection within the meaning of the Vehicle Code; or that any other theory was adopted or pursued by either party. Under such circumstances, the court was justified in concluding that defendants had proceeded on the theory that the intersection was a through highway intersection and that defendants' proposed instruction on the right of way at an intersection of highways, neither of which is a through highway, would have been inapplicable; and that defendants' instruction relating to the right of way at a through highway intersection should be given. In the case of *Lindenbaum* v. *Barbour*, 213 Cal. 277, 285 [2 Pac. (2d) 161], which was an action for damages for personal injury sustained in an automobile collision, the evidence showed that appellant did not stop at a boulevard stop sign and was in the intersection when respondent's car entered it. The board of supervisors passed an ordinance declaring one of the highways involved to be a through highway, but the evidence did not disclose that said board had authorized anyone to erect the stop signs as provided in the Vehicle Code. There was some evidence to the effect that the Automobile Club erected them at the intersection. The Supreme Court said:

''It is suggested that inasmuch as there was not introduced in evidence any official authorization by the board of

supervisors of San Bernardino County to anyone to erect the stop sign at the intersection in question, that the stop sign was without legal significance and the defendant was under no duty to stop at such stop sign. The only testimony in the record with reference to the erection of the stop sign was the testimony of a witness in answer to the question, 'There is one of those stop signs there at that intersection?', 'Yes, put up by the Automobile Club.' Apparently no question was raised in the trial court as to whether or not the stop sign was properly at the intersection and neither respondent nor appellant attempted to prove or disprove that an authorization had been given to the Automobile Club by the board of supervisors to erect stop signs along Foothill Boulevard. In the absence of any question as to the validity of the stop sign at the trial by the appellant, or any controversy as to whether it was properly at the intersection, we do not think it was incumbent upon the respondent to offer in evidence the official authorization for the erection of the sign, and her failure to do so under such circumstances would not justify us in reversing a verdict in her favor.''

In *Abbott* v. *Cavalli*, 114 Cal. App. 379, 382, 383 [300 Pac. 67], plaintiff tried the case on the theory that section 141¾ of the California Vehicle Act, adopted in 1929 (Stats. 1929, p. 1580), was retroactive and that she, as a guest in an automobile, was required to prove gross negligence on the part of her host in order to recover damages, although the accident occurred prior to the date the amendment became effective. Later the Supreme Court decided, in *Callet* v. *Alioto*, 210 Cal. 65, 70 [290 Pac. 438], that said section was not retroactive. Plaintiff then appealed, contending on appeal that, since the action was tried and determined on an erroneous theory, the judgment should be reversed. The appellate court affirmed the judgment, stating: ''There would be much force in plaintiff's contention were it not for the fact that she invited the error of which she now complains''. ■ After defendants offered the instruction in question and requested the court to give it, if for any reason defendants did not want the court to read it to the jury, they should have withdrawn it, or otherwise made it known to the court that they did not desire to have it given. A party has no right to complain of instructions given at his own request, or of instructions given which were not offered by him, but which

relate to a subject matter or legal question about which he himself has offered an instruction. (*Hughes* v. *Pacific Elec. Ry. Co.*, 58 Cal. App. 375, 380, 381 [208 Pac. 335]; *Hartman Ranch Co.* v. *Associated Oil Co.*, 10 Cal. (2d) 232, 250 [73 Pac. (2d) 1163].) The fact that the instant case was tried on the theory that the intersection was a through highway intersection, coupled with the fact that defendants submitted to the court an instruction explaining the right of way at such intersections, undoubtedly led the court to believe that defendants desired the court to give that instruction and, even if it were erroneous, defendants invited the error and cannot now be heard to complain. (*Abbott* v. *Cavalli, supra,* pp. 384, 385; *Hartman Ranch Co.* v. *Associated Oil Co., supra; Jesse* v. *Giguiere,* 24 Cal. App. (2d) 160, 163, 164 [74 Pac. (2d) 310].)

■ Appellants take exception to an instruction offered by plaintiff and given by the court which defined a through highway in the language of section 82.5 of the Vehicle Code, as follows: ''The court instructs the jury that a through highway is a highway at the entrance to which vehicular traffic from intersecting highways is required by law to stop before entering or crossing the same when stop signs are erected as provided by law.'' Appellants maintain that said section 82.5 is general and that section 471 of the Vehicle Code is specific as to the requirements necessary to create a through highway; that they deal with the same subject matter and, therefore, are *in pari materia* and must be construed together as one; and that the definition of a through highway which was given by the court ignored the specific requirements of said section 471 which qualifies the general provisions of section 82.5. This, say appellants, might have confused the jury and it also permitted them to find that Oak Street was a through highway when the evidence failed to show that it was legally so designated or that the erection of the stop signs was legally authorized, and thus the jury was allowed to change the rule of right of way applicable to the intersection in question. The most direct answer to this contention is that, as stated above, the case was tried on the theory that Oak Street was a through highway and it was not necessary for the jury to determine whether or not such was the fact.

■ This brings us to the last of the appellants' main contentions—that contributory negligence on the part of plaintiff

appears as a matter of law. In view of our conclusion that the case was tried by all parties on the theory that the intersection involved was a through highway intersection, it is unnecessary to comment upon appellants' point that their automobile entered the intersection first and, therefore, under section 550 of the Vehicle Code, had the right of way. We feel that, under the theory developed at the trial, section 550 of the Vehicle Code does not apply and that section 552 of the Vehicle Code, relating to right of way at a through highway, does apply. ▮ Every intendment is in favor of the judgment and we must view the evidence most favorably to the plaintiff and respondent. The intersection was unobstructed; defendant driver could see 1,000 feet in the direction from which plaintiff was approaching; the plaintiff was traveling only three miles in excess of the *prima facie* limit. The jury undoubtedly believed that plaintiff was free from negligence as he approached the intersection and, therefore, had the right to presume that defendant Perry would stop at the stop sign, would yield the right of way to him, and would not proceed into the intersection until he could do so without creating a traffic hazard. (Sec. 552, Vehicle Code; *Billig* v. *Southern Pac. Co.,* 192 Cal. 357, 363 [219 Pac. 992]; *Harris* v. *Johnson,* 174 Cal. 55, 58 [161 Pac. 1155, Ann. Cas. 1918E, 560, L. R. A. 1917C, 477].) The jurors, no doubt, were also convinced that defendant Perry failed to stop at the boulevard stop sign. The evidence also showed that when plaintiff realized that Perry had not stopped, but had rushed across in front of him, he attempted to stop his automobile, but was too close to defendants' truck to avoid the collision, due to the fault of Perry. ▮ There was evidence that plaintiff had a "shimmy" in his front wheels and appellants insist that, by reason of his failure to keep his automobile in proper mechanical condition, plaintiff was guilty of contributory negligence. However, the record is barren as to what effect, if any, this had upon plaintiff's automobile, and there is no evidence indicating that such defect proximately contributed, in the slightest degree, to the injuries. Under such circumstances, it cannot be said that plaintiff was guilty of contributory negligence as a matter of law, and we believe that issue was an issue of fact for the jury to determine.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.