[Civ. No. 18635. First Dist., Div. Two. Mar. 13, 1961.]

JOHN F. MERCADO, Respondent, v. HARRY HOEFLER et al., Appellants.

*Assigned by Chairman of Judicial Council.

Jensen & Zavlaris, Jensen, Zavlaris & Weir, Elmer D. Jensen, Malovos, Mager & Chasuk, Herman J. Mager and Chalmers Smith for Appellants.

Boccardo, Blum, Lull, Niland & Teerlink and Edward J. Niland for Respondent.

SHOEMAKER, J.—This is an appeal by defendants Harry and Ray Hoefler from a judgment in an action for slander awarding plaintiff John F. Mercado $17,500 as compensatory damages.

The record discloses that appellant Harry Hoefler was the operator of six real estate offices in Northern California. The appellant Ray Hoefler managed the San Jose office where respondent was employed as a real estate salesman. Prior to October of 1952 and during his employment, respondent handled three different deals for a Mr. Yoshihara, a Nisei, all of which fell through, including a prospective sale of a home owned by a Mr. Amstutz. A petition signed by residents in the neighborhood protesting the sale of the Amstutz home to any non-Caucasian was presented to Ray Hoefler by one of the petitioners and was placed in the office files. Subsequently respondent, at the request of Mr. Amstutz, obtained the peti-

tion from the files and delivered it to them. On October 8, 1952, the San Jose Evening News reported the fact of the petition against the sale to Yoshihara. The next day appellant Ray Hoefler called respondent into his office and said to him, "We are through, John. I want the keys to the office." On October 10, 1952, Mr. Goodman called appellant Ray Hoefler, identifying himself as a reporter on the Evening News, and asked him about the alleged firing of Mercado, concerning which Ray Hoefler stated to Goodman, "He was fired for not doing things properly and for not following office rules. As a matter of fact, I am seriously considering bringing charges against Mercado before the Real Estate Commissioner. He has taken papers out of my private file without right to do so. Other brokers have also had trouble with Mercado." This statement was later published in the newspaper and given wide circulation in the area.

On argument before this court, the parties concede that said remarks are defamatory *per se*. However, each has his separate contentions as to why the judgment should be reversed. Appellant Harry Hoefler contends that he is not liable for the remarks made by Ray Hoefler and that the judgment against him cannot be supported on any basis, and particularly not upon any relationship of partner, joint venturer, or master and servant. He also cites error on the part of the court in admission of evidence, comment by the court, and the instructions to the jury.

At the trial, respondent asserted the appellants were partners, and presented evidence to this effect which was strenuously opposed by Harry Hoefler and the jury was instructed upon the subject. He contends that the issue of partnership was not raised by the pleadings and hence the reception of any evidence or instructions thereon was error. This argument cannot stand, for the question of partnership was raised in the pretrial order which effectively put this matter into issue at the trial. (Rule 8.8, Rules for the Superior Courts.) The burden of proving the existence of a partnership lies upon the party asserting its existence, in this case the respondent. (*Milstein* v. *Sartain* (1943), 56 Cal.App. 2d 924, 932 [133 P.2d 836].) Testimony was produced that Ray Hoefler, as manager, controlled the San Jose office, that he received no salary as office manager but that he divided the net income of the San Jose office equally with Harry.

Whether an agreement to share profits constitutes the undertaking of a partnership or merely a method of pay-

ing an employee presents a question of fact (*Nelson* v. *Abraham* (1947), 29 Cal.2d 745, 750 [177 P.2d 931], and the mere fact that Ray Hoefler contributed labor and skill rather than capital does not preclude the existence of a partnership. (*Kaufman-Brown Potato Co.* v. *Long* (1950), 182 F.2d 594, 600.) ▇ Where, as here, a determination of the fact question of partnership is supported by substantial evidence, the judgment cannot be interfered with by the appellate court. (*Dills* v. *Delira Corp.* (1956), 145 Cal.App.2d 124, 133 [302 P.2d 397].)

▇ This appellant next points out that joint venture was not in issue under the pleadings or specifically put in issue by the pretrial order, and that it was error for the court to instruct the jury as to this theory of liability. This contention is untenable, for if a case is tried on a theory which is sufficient and evidence accordingly is received without objection, the sufficiency of the pleading may not later be attacked upon this ground (*McClure* v. *Donovan* (1949), 33 Cal.2d 717, 731 [205 P.2d 17]), and particularly in the present situation where there are a great many similarities between joint venture, and partnership which was in issue under the pretrial order. ▇ The existence of a joint venture, like that of a partnership, is a question of fact. (*Nels E. Nelson, Inc.* v. *Tarman* (1958), 163 Cal.App.2d 714, 724 [329 P.2d 953].) ▇ Since the jury could have found the relationship between Harry and Ray Hoefler to be that of joint venturers, the judgment as to Harry Hoefler on this theory would be warranted.

▇ The appellant Harry Hoefler next contends that even if it be assumed that Ray was his employee, his remarks were not within the scope of his employment, and therefore he sustained no liability by reason thereof. ▇ It is well established that a principal can be liable for the malicious torts of his employee committed within the scope of his employment, despite any contention that the employee may not have had authority to engage in tortious conduct. (*Carr* v. *Wm. C. Crowell Co.* (1946), 28 Cal.2d 652, 654 [171 P.2d 5]; *Fields* v. *Sanders* (1947), 29 Cal.2d 834, 841 [180 P.2d 684, 172 A.L.R. 525].) ▇ The transcript indicates that there was sufficient evidence for the jury to find that Ray Hoefler as manager was acting within the scope of his authority in speaking for his firm, which was concerned in the racial controversy, particularly Ray Hoefler's testimony which expressed his concern for the firm's reputation and motivated his remarks

to the reporter. Since a principal can be liable for torts which are defamatory in nature when committed within the scope of an agent's employment (*Draper* v. *Hellman Com. T. & S. Bank* (1928), 203 Cal. 26, 38 [263 P. 240]; Rest., 2d, Agency, § 247, comment c), the judgment against Harry Hoefler cannot be successfully attacked on this ground.

The appellants jointly contend that the trial court erroneously denied their motions for nonsuit, directed verdict, and judgment notwithstanding the verdict. The basis of this argument is that respondent failed to comply with the provisions of Civil Code, section 48a, which requires a demand for correction "[i]n any action for damages for the publication of a libel in a newspaper," otherwise the plaintiff is limited to special damages. Respondent points out that appellants failed to make reference to failure to comply with this code section in their answers. However, it would appear that where in fact the section is applicable it is the plaintiff's duty to plead compliance therewith. (*Pridonoff* v. *Balokovich* (1951), 36 Cal.2d 788, 791 [228 P.2d 6].) However, we have concluded this section is not applicable to the present action, which is one for slander, not libel. Civil Code, section 46, defining slander, includes language which upon its face has a natural tendency to injure a person's reputation either generally or with respect to his occupation. (*Semple* v. *Andrews* (1938), 27 Cal.App.2d 228, 232 [81 P.2d 203].) The mere fact that oral defamation is subsequently quoted or printed in a newspaper does not make it libel. It is still slander. (*Oberkotter* v. *Woolman* (1921), 187 Cal. 500, 505 [202 P. 669]; *Semple* v. *Andrews, supra*.) The repetition of slander may be shown, as was done here, since it bears on the extent of liability. (*Schessler* v. *Keck* (1956), 138 Cal.App.2d 663, 669 [292 P.2d 314]; Rest., Torts, § 576.) The appellant argues that labeling the defamation slander is a devious way to circumvent the intended legislative effect of the section. Although the application of the section extends beyond newspapers themselves to some processes related to them (see *Pridonoff* v. *Balokovich, supra,* involving the author of a newspaper article; *Farr* v. *Bramblett* (1955), 132 Cal.App.2d 36 [281 P.2d 372], involving the advertisers of a libelous advertisement), it has been pointed out that the section was enacted primarily to protect news dissemination. (*Werner* v. *Southern Calif. etc. Newspapers* (1950), 35 Cal.2d 121, 128 [216 P.2d 825, 13 A.L.R.2d 252].) If appellants' argument were to prevail, persons guilty of

oral defamation would enjoy the same protection any time such remarks subsequently found their way into a newspaper. We do not believe that the legislators ever intended such a result in the adoption of said section.

The appellants contend that the trial court erred in admitting into evidence certain newspaper clippings. The first three concerned the local controversy regarding the alleged refusal to sell the Amstutz home to a non-Caucasian. The fourth contained the defamatory statements made by appellant Ray Hoefler to the reporter. Counsel for both appellants objected to introduction of the clippings on the ground of noncompliance with Civil Code, section 48a. In view of the earlier discussion regarding Civil Code, section 48a, we find no error in the admission of this evidence. Thereafter, counsel for appellants objected on the ground that the clippings were hearsay, and incompetent, irrelevant and immaterial. The evidence was admitted for the limited purpose of showing the notoriety given the racial controversy in the local press, and was not to be considered as evidence of the truth of the matter stated therein. Where the fact of statements having been made is in controversy, rather than the truth of their contents, such are excepted from the hearsay rule. (*People* v. *Henry* (1948), 86 Cal.App.2d 785, 789 [195 P.2d 478].) The admissibility of the clippings turns on their materiality and relevancy. The original utterer of slanderous remarks can be liable for the consequences of republications to third persons. (*Schessler* v. *Keck, supra.*) The background of notoriety and publicity preceding the slanderous remarks certainly is indicative of the possibility of aggravated harm caused when such comments were made to a newspaper reporter; thus the clippings were material to the issue of damages. The relevancy of evidence is tested by whether it tends logically, naturally, and by reasonable inference to prove or disprove a material issue. (*People* v. *Jones* (1954), 42 Cal.2d 219, 222 [266 P.2d 38].) A wide discretion is left to the trial judge in determining the relevancy and admissibility of evidence. (*Decter* v. *Stevenson Properties, Inc.* (1952), 39 Cal.2d 407, 420 [247 P.2d 11].) Appellants urge that publications other than the one sued upon are inadmissible unless they bear upon malice or mitigation of damages (citing *Newby* v. *Times-Mirror Co.* (1920), 46 Cal.App. 110, 126 [188 P. 1008]). However, it is clear that aggravation of damages is merely the opposite side of

the coin of mitigation of damages, and therefore it would appear evidence of such is equally admissible. Lastly, appellants complain that the court failed to give limiting instructions to the jury on the use of this evidence. Since the appellants made no request for such a limiting instruction, they cannot now complain that none was given. (*Hatfield* v. *Levy Brothers* (1941), 18 Cal.2d 798, 810 [117 P.2d 841].) No error was committed by admission of the clippings.

 The appellant Ray Hoefler contends that the effect of combining three instructions was to tell the jury that the words plaintiff complained of were false as a matter of law. Where such is the effect of instructions, prejudicial error is committed. (*Nova* v. *Flaherty* (1956), 145 Cal.App.2d 761, 763 [303 P.2d 382] ; *Rudolph* v. *Gorman* (1959), 169 Cal.App. 2d 666, 670 [338 P.2d 218].) Here the jury was instructed: that as a matter of law the remarks were slander *per se* (respondent's instruction No. 7[1]) ; that slanderous *per se* language fell within the definition of slander (respondent's instruction No. 10[2]) ; and the definition of slander which included the terminology "false publication" (respondent's

---

[1] "Plaintiff's Instruction No. 7 . . .:
"I have determined as a matter of law that the words alleged in plaintiff's Complaint constitutes [*sic*] slander, per se. Per se is a Latin term which means in itself. This means that if you find that said words were in fact spoken by the defendants, acting by and through the defendant, Ray Hoefler—I will start that over again. *I have determined as a matter of law that the words alleged in plaintiff's Complaint constitute[s] slander, per se. This means that if you find that said words were in fact spoken by the defendants,* acting by and through the defendant, Ray Hoefler, of and concerning the plaintiff, to some third person, *and that they were untrue,* the plaintiff's case has been made out and he is not required to prove any actual damages, but may recover such damages as you, in your sound discretion, deem just and reasonable." [Emphasis supplied.]

[2] "Plaintiff's Instruction No. 10 . . .:
"In construing language charged as slanderous, it is necessary to consider the utterance as a whole and you must place yourself in the position of a listener, under the circumstances of the publication. *A statement which is slanderous, per se, is an utterance which, upon its face, falls within the definition of slander.* This definition is very broad and includes almost any language which, upon its face, has a natural tendency to injure a person's reputation, either generally or with respect to his occupation. If one publishes an utterance which is slanderous, per se, it is not necessary that the plaintiff prove any special damage. When language is used concerning a person or his affairs which, from its nature, necessarily must, or presumably will, as its natural and proximate consequence, occasion him pecuniary loss, its publication prima facie constitutes a cause of action, and prima facie constitutes a wrong without any evidence of damage other than that which is implied or presumed from the face of the publication." [Emphasis supplied.]

instruction No. 2[3]). The appellant's interpretation of the meaning of these instructions seems to be torturing the literal import of the language used to an extreme. Respondent's instruction number 10, which told the jury that words which were slanderous *per se* fell within the definition of slander, merely informed the jury that where language is used that has a tendency to injure a person in his profession, such constituted slander *per se* and hence special damages did not have to be proved; it would be difficult to imagine the jury's being misled into focusing their attention on the definition of slander and particularly "false publication" and thus believing they were being told the statements were false as a matter of law. There was nothing incorrect about the definition of slander as it appeared in respondent's instruction number 2. (See Civ. Code, § 46, subd. 3.) The judge's determination that the language used constituted slander *per se* in respondent's instruction number 7 was part of his judicial function (*Maher* v. *Devlin* (1928), 203 Cal. 270, 278 [263 P. 812]), which was recognized at the outset by appellant Ray Hoefler, who asked for a determination of the question, and the determination was correct since the language impugned respondent's vocational capacity. (*Williams* v. *Seiglitz* (1921), 186 Cal. 767, 772 [200 P. 635].) It must be noted that the respondent's same seventh instruction informed the jury with great particularity that they had to find that the words had been spoken and were untrue to impose liability. The mere fact that a jury is told language used is defamatory does not in effect instruct them that language sued upon is false as a matter of law. (*Larrick* v. *Gilloon* (1959), 176 Cal.App.2d 408, 417 [1 Cal.Rptr. 360].) We do not believe that the effect of the instructions was to tell the jury that language used was false as a matter of law.

In addition to the seventh instruction of respondent, several other instructions were given which also told the jury in effect that it was necessary for them to find untruth before liability could be imposed. The complained-of instructions correctly defined the law and no prejudice was suffered in

---

[3] "Plaintiff's Instruction Number 2 . . .:

"*Slander is a false and unprivileged publication,* other than libel, which charges any person with crime or tends directly to injure him with respect to his profession, trade or business, either by imputing to him general disqualification in those respects, which his occupation peculiarly requires, or by imputing something with reference to his profession, trade or business which has a natural tendency to lessen its profits." [Emphasis supplied.]

their giving. (*Tuttle* v. *Crawford* (1936), 8 Cal.2d 126, 134 [63 P.2d 1128]; *Valentine* v. *Provident Mut. L. Ins. Co.* (1936), 12 Cal.App.2d 616, 622 [55 P.2d 1243].)

The jury was instructed that if they found implications from the remarks made, such as unethical conduct, or lack of requisite qualities for business, the appellants' burden on the defense of truth carried to these imputations. (Respondent's instructions No. 25,[4] and No. 25-a.[5]) The appellant Ray Hoefler cites *Jarman* v. *Rea* (1902), 137 Cal. 339, 345 [70 P. 216]; *Bates* v. *Campbell* (1931), 213 Cal. 438, 443 [2 P.2d 383], for the proposition that innuendo may not enlarge or add to the publication. These cases made statements to that effect in dictum while holding that where language was defamatory *per se*, innuendo was not necessary and proof of special damages was not required. The appellant attempts to reinforce his argument with the point that when language is defamatory *per se*, it must be unambiguous. (*Maher* v. *Devlin, supra*, at p. 278.) Therefore, there should be no need to go beyond the language itself. The court made that statement when holding that language could not be both defamatory *per se* and capable of an innocent meaning. However, since that time the Supreme Court has held that language may be libelous on its face even though susceptible of an innocent interpretation. (*MacLeod* v. *Tribune Publishing Co.*

---

[4]''Plaintiff's Instruction Number 25 . . .:

''If you find that the defendants, acting by and through the defendant Ray Hoefler, uttered certain slanderous statements which were false and untrue, and which imputed to the plaintiff a general disqualification in those respects, which his profession peculiarly requires, then you are instructed that the plaintiff is entitled to your verdict. Truth is a defense to a charge of slander, but the burden of proving the truth of the remarks rests with the defendants. The defendants must prove the truth of the charge they made against the plaintiff in their remarks about him, and *the defense of truth must be as broad as the charge made by the defendants. If, in their remarks, the defendants implied unethical conduct on the part of the plaintiff, or that he was guilty of violating business ethics, or that he was not possessed of qualities peculiarly required by one engaged in his business, it is incumbent upon the defendants to prove those charges and each of them are true.* If they fail to establish the truth of the charges, the defense of truth will fall and plaintiff will be entitled to your verdict.'' [Emphasis supplied.]

[5]''Plaintiff's Instruction Number 25-a . . .:

''To constitute the defense of truth, *the defendants must prove the truth of the imputation carried by the word spoken,* and it is not sufficient that they prove the literal truth of the words spoken. Where the imputation of spoken words is that a real estate salesman is incompetent or unethical, the defense of truth must establish that he is in fact incompetent and unethical. Proof that the words spoken were literally true, would not be sufficient to establish the defense of truth.'' [Emphasis supplied.]

(1959), 52 Cal.2d 536, 549 [343 P.2d 36].) Therefore, it appears that the unambiguous qualification attempted to be imposed by appellant Ray Hoefler is not really a requirement of defamation *per se*, or conversely in and of itself a limitation on the use of innuendo. In view of the language of the MacLeod case, *supra*, at page 551, the instructions are not improper; ". . .'the publication is to be measured not so much by its effect when subjected to the critical analysis of a mind trained in the law, but by the natural and probable effect upon the mind of the average reader.' " The "innuendo" which the instructions opened up were no broader than the permissible extent indicated by the MacLeod case, *supra*. It also must be noted that appellant Ray Hoefler's instructions on the defense of truth, which were given, went to the implications and imputations of the remarks. (Appellant Ray Hoefler's instructions No. 10 and No. 18.[6]) If the instructions of respondent were erroneous, appellant Ray Hoefler could not complain, because his instructions dealt with substantially the same subject. (*Charves* v. *Terminal Railways* (1919), 44 Cal. App. 221, 225 [186 P. 154]; *Hughes* v. *Pacific Electric Ry. Co.* (1922), 58 Cal.App. 375, 380 [208 P. 335].)

Appellant Harry Hoefler contends that when the judge commented during the trial that the appellants were partners, prejudicial error was committed. However, the judge admonished the jury that his statement did not constitute evidence and that they were to consider only the witnesses' testimony. The jury was also instructed that it was the sole trier of fact and in our opinion these admonitions or instructions cured the error, if any. (*Jones* v. *Bayley*

---

[6] 'Defendant Ray Hoefler's Instruction Number 10 . . .:

"You are instructed that in this action *if the substantial imputations of the defendant, Ray Hoefler's statements be proved true,* a slight inaccuracy in the details will not prevent a judgment for the defendants, if the inaccuracy does not change the complexion of the affair, so as to affect the listener to or the reader of the statement differently than the actual truth would. It is not the mere fact that a difference exists between the statement of the defendant and what actually occurred, that determines the presence of the slander. The question you are to ask yourselves is, is the difference of a substantial character, and does it produce a different effect? If the difference is not substantial and does not produce a different effect, then you are to return a verdict in favor of the defendants.'' [Emphasis supplied.]

"Defendant Ray Hoefler's Instruction Number 18 . . .:

"In construing the meaning of language charged as slanderous, not only the expressions used but also the apparent object of the writer or speaker and the *whole scope of the matter as well as the cause and occasion of the publication must be considered.*'' [Emphasis supplied.]

(1942), 49 Cal.App.2d 647, 657 [122 P.2d 293].) ▮ He also charges respondent's counsel with about 15 separate instances of alleged prejudicial misconduct. The trial judge instructed the jury that statements made by counsel during trial could not be considered by them as evidence, as well as admonishing them at appropriate times throughout the trial. Most of the instances referred to are inconsequential and any misconduct, if present, was cured by the court's admonitions and instructions. (*McCullough* v. *Langer* (1937), 23 Cal.App.2d 510, 522 [73 P.2d 649]; *Ades* v. *Brush* (1944), 66 Cal.App.2d 436, 445 [152 P.2d 519]; *Thompson* v. *Hickman* (1948), 89 Cal.App.2d 356, 364 [200 P.2d 893].)

The judgment as to each appellant is affirmed, and the order denying each appellant's motion for judgment notwithstanding the verdict is likewise affirmed.

Kaufman, P. J., and Draper, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 10, 1961.