[Civ. No. 6126. Fourth Dist. Dec. 18, 1959.]

H. G. LARRICK, SR. et al., Respondents, v. FRANK J. GILLOON, Appellant.

410

William B. Murrish, John W. Porter and Gostin & Katz for Appellant.

Gray, Cary, Ames & Frye for Respondents.

MUSSELL, J.—This is an action for damages for false, defamatory and libelous statements published by the defendant containing accusations and insinuations of collusion, bad faith, fraud, misuse of public office, dishonesty, and falsifica-

tion of minutes of a directors' meeting of the Santa Fe Irrigation District in San Diego County. A jury awarded plaintiffs $400 compensatory and $10,000 punitive damages and defendant Frank J. Gilloon appeals from the judgment entered thereon.

The complaint and the supplement and amendment thereto contains seven causes of action based upon a series of press releases and political advertisements published by defendant. Plaintiffs H. G. Larrick, Sr., Ray Badger and George Dose were directors of the Santa Fe Irrigation District and plaintiff D. M. Bakewell was its secretary and manager. Defendant Frank J. Gilloon owned property in said district. He had served as a director of the district from 1933 to 1937 and had an intimate knowledge of its affairs.

The first cause of action is based upon statements which were published by defendant in the Rancho Santa Fe Times in its edition of December 20, 1956, as shown by Exhibits A and B attached to the complaint. In it Gilloon demanded the immediate resignation from office of manager Bakewell and all board members and stated that if the resignations were not forthcoming at once, he would call on the county grand jury for an indictment and their removal from office. He further stated that Mr. Easton, the San Diego County Tax Collector, by persuading the Board of Supervisors of San Diego County to refuse to make a purchase option agreement with the district had stopped a "racket" which had defrauded the county and district of large revenues for several years; that the district sold land to its favorites under contracts which he (Gilloon) considered showed definite evidence of conspiracy, collusion and fraud; that if Larrick, Dose, Badger and Bakewell did not remove themselves promptly from all official connection with the district, he (Gilloon) would lay before the grand jury evidence in the contracts, in the minutes, in policy and in action or statements which he (Gilloon) felt sure would bring about their indictment and removal from office. In Exhibit B it was stated that "Gilloon has specifically charged the board with collusion, fraud, bad faith and dishonesty" in its sale of 96 acres of tax-deeded land to Holland J. Ford, contract for which was executed on May 18, 1954. In this publication Gilloon also stated that "It is my belief that in effect the contract is a conspiracy to defraud the District and the county of assessments and taxes" and that "On the basis of the terms of the last Ford contract and conditions

surrounding it as outlined, it is my belief that it shows collusion, fraud and bad faith and dishonesty.'' Gilloon further stated that he had discovered that Bakewell, with the connivance of the board members, had deliberately falsified the minutes of the board by inclusion of a condition therein not discussed or agreed upon by the board members.

The second cause of action is based·on a publication in the Encinitas Coast Dispatch on December 27, 1956, and the third cause of action is based on a publication in the San Dieguito Citizen on December 27, 1956. In these publications defendant Gilloon set forth a number of questions relative to the district's dealings with Ford and demanded that the directors answer them or resign—''or—would you rather quit and go home—now—or to the grand jury.'' In a publication in the Encinitas Coast Dispatch on January 3, 1957, which is the basis of the fourth cause of action, Gilloon stated that ''phony service charges'' had been ''loaded on the residents and property owners of the District by Larrick, Badger, Dose, their confederates and their predecessor friends.'' The fifth cause of action is based on a publication in the San Dieguito Citizen, under date of January 3, 1957, in which Gilloon stated that he had bid for the state's title to 700 acres of land lying between Rancho Santa Fe and Solana Beach in an effort to block what he believed was a ''set up'' for a ''land grab'' of 1,000 to 1,600 acres of district land and a ''give away'' of that land on terms similar to the notorious Ford-SFID agreement. The sixth cause of action is based on the publication on January 31, 1957, in the Solana Beach Advertiser. This article was addressed to the voters of·the district and in it Gilloon stated that all the facts stated by him were true and verifiable and that the directors of the district ''know that the interpretation of these facts can only show one or a combination of the following: stupidity, incompetence, lack of planning, favoritism of the grossest sort, vindictiveness, bad faith, collusion and lack of integrity.'' This publication was also published on January 31, 1957, in the Encinitas Coast Dispatch and is the basis of the seventh count in the supplement and amendment to the complaint.

Appellant argues that the action below in entirety violated freedom of speech and was unconstitutional because affecting ''libel'' of government officers in their governmental capacity only. We are not in accord with this argument.

In 30 California Jurisprudence 2d, Libel and Slander, section 4, page 661, it is said that the constitutional provision

that every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of such right, and that no law shall be passed to restrain or abridge the liberty of speech or the press, by its very terms implies that the liberties of speech and of the press are not unlimited, but are subject to reasonable limitations.

In *Emde* v. *San Joaquin County etc. Council,* 23 Cal.2d 146, 154 [143 P.2d 20, 150 A.L.R. 916], the court, in discussing publications concerning a labor dispute, said:

"Although the publicizing of the facts of a labor dispute in a peaceful manner is within the liberty of a free discussion guaranteed by the Fourteenth Amendment to the United States Constitution, a party to the controversy has no absolute privilege to discuss such matters so as to avoid civil responsibility for injury to another caused by a malicious and false statement made in the course of the differences between them."

In *Dauphiny* v. *Buhne,* 153 Cal. 757, 763 [96 P. 880, 126 Am.St.Rep. 136], it is said that libel is no more justifiable when published about a candidate for public office than if published about him on any other occasion. In *Jarman* v. *Rea,* 137 Cal. 339, 353 [70 P. 216], it is said that the publication of falsehood and calumny against public officers or candidates for public offices is an offense most dangerous to the people, and deserves punishment, because the people may be deceived, and reject the best citizens, to their great injury, and it may be to the loss of their liberties.

In *Schomberg* v. *Walker,* 132 Cal. 224, 230 [64 P. 290], it is said that the right of a citizen to comment on the proceedings of public officers is limited by the condition that "he does so fairly and with honest purpose," and that the line be observed "where defamation commences [and] true criticism ends." In *Snively* v. *Record Publishing Co.,* 185 Cal. 565 [198 P. 1], it is held that the publication must be both false and unprivileged in order that it shall constitute actionable libel and that *Dauphiny* v. *Buhne* and *Jarman* v. *Rea, supra,* should be overruled insofar as they declare that a privileged communication must be true in order to make it privileged.

The next argument advanced by appellant is that the writings were absolutely privileged under Civil Code, section 47, subdivision 2, because expressed during and in the course of an official proceeding authorized by law. This argument is without merit. It is true that under subdivision 2 of section 47 of the Civil Code publications made in the

course of a judicial proceeding are absolutely privileged (*Albertson* v. *Raboff*, 46 Cal.2d 375, 379 [295 P.2d 405]) and that subsection 3 of subdivision 2 of said section extends the rule to a publication made in any other proceeding authorized by law. However, in *Gunsul* v. *Ray*, 6 Cal.App.2d 528 [45 P.2d 248], it was held that there is no rule of public policy which would give to a citizen actuated by malice a greater immunity from suits for libel in cases arising out of recall elections than in cases arising out of ordinary elections, and that publications made in connection with such elections, if false, must be made without malice.

In *MacLeod* v. *Tribune Publishing Co.*, 52 Cal.2d 536 [343 P.2d 36], it was held that a complaint stated a cause of action where it alleged a political libel against a candidate for public office published on the day of an election. It appeared from the complaint in that action that plaintiff was a candidate for public office and that defendant's article reported facts relevant to his qualifications. The defendant contended that the article was privileged and that plaintiff's allegations of malice were insufficient to defeat the privilege. The court held that the allegations of malice were sufficient and stated that the privilege was lost if the defendant had no reasonable grounds for believing his statements to be true.

In *Morcom* v. *San Francisco Shopping News*, 4 Cal.App.2d 284, 287-288 [40 P.2d 940], the court said:

"Section 47 of the Civil Code defines five classes of publications which are declared to be privileged. The claim of privilege in the instant case is made under subdivision 3 of that section, which defines the privilege thereby protected as one made 'in a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or (3) who is requested by the person interested to give the information.' When one offers himself for public office, or occupies a position of public trust, he is held to have proffered himself for public investigation, and his conduct is open to public criticism, as it is for the interest of society that his acts may be freely published with fitting comments or strictures. This right, of course, does not warrant aspersive attacks upon the motive or character of the officer.

"A newspaper, or other publication, or private citizen, within proper limit, may express opinions and indulge in

criticism upon the character or qualifications of public officers and candidates for public office.

. . . . . . . . . . . . . . .

"But, in order that the privilege accorded by subdivision 3 of section 47 of the Civil Code, be available, it must appear that the publication was made without malice. If it be made to appear that the defendant acted with malicious intent, in uttering the libel, it cannot successfully invoke the protection of this privilege."

Appellant claims that "insofar as they were controverted defendant's publications were expressions of opinion upon facts stated and as such were not actionable." It is true that mere expressions of opinion or severe criticism are not libelous if they clearly go only to the merits or demerits of a condition, even though they may adversely affect the public activities or fitness for office of individuals who are intimately connected with the principal object of the attack. (*Howard* v. *Southern California etc. Newspapers*, 95 Cal. App.2d 580, 584-585 [213 P.2d 399].) However, in the instant case the publications by defendant are, in several instances, not stated as opinions but as statements of fact and the so-called opinions of defendant Gilloon were not represented by him as being upon facts stated by him or known to the public. For example, in Gilloon's statement that he would lay before the grand jury evidence in contracts, in the minutes, in "policy" and in actions and statements "which I feel sure will bring about their indictment and removal from office" he, by his own statement, did not refer to evidence which he had made or proposed to make public but it is "evidence" which he proposed to submit to the grand jury, intimating that there were facts in evidence of a criminal nature not known to the public and not stated by him. Again, in Gilloon's statement, in Exhibit A, he refers to "contracts" made in the previous three and one-half years which he said, "I consider show definite evidence of conspiracy, collusion and fraud." The definite evidence referred to is not set forth nor are the terms or nature of the contracts stated. In Exhibit A Gilloon stated that Mr. Easton, the County Tax Collector, by inducing the supervisors to set a figure of $100,000 as the sales price to the district of certain land, had stopped the "racket" which had "defrauded" the county and the district of tax revenue for over a period of years. Neither the nature of the "racket" nor the facts alleged to constitute it are set forth. The record contains substantial evidence to support an infer-

ence by the jury that Gilloon's statements were not mere expressions of opinion, at least in many instances, and that he did not honestly hold such opinions.

Appellant argues that in any event the evidence was insufficient as a matter of law to establish malice. This argument is not persuasive. In *Scott* v. *Times-Mirror Co.*, 181 Cal. 345 [182 P. 672, 12 A.L.R. 1007], it is said that it is well established that in actions for civil libel where the plaintiff seeks to recover punitive or exemplary damages, or where the defendant alleges that the publication was justified on the ground that it was privileged, actual malice or malice in fact becomes an issue; that the question of whether a publication was inspired by actual malice is essentially and peculiarly a question of fact; that therefore any evidence which would logically tend to solve the question and which is not otherwise objectionable is admissible; that the test to be applied to evidence offered for this purpose is: Does it tend to prove the state of mind of the party responsible for the publication?; that if the evidence has such logical import and is not otherwise incompetent, it must be received, and it is for the triers of the fact to determine the weight to be given such evidence. It is further held in that case that

"Malice may be proved by extrinsic evidence showing that the defendant bore a long-standing grudge against the plaintiff, that there were former disputes between them, that defendant had formerly been in the plaintiff's employ, and was dismissed for misconduct. Any previous quarrel, rivalry or ill-feeling between plaintiff and defendant—in short, almost everything defendant has ever said or done with reference to the plaintiff—may be urged as evidence of malice."

A review of the record in this connection impels us to conclude that there was substantial evidence showing malice. The language and tenor of the publications; the repeated threats of grand jury action if the respondents did not resign; the record of Gilloon's long controversy and many disagreements with the board members of the district, and his evident hostility toward them, in addition to the false statements made, are sufficient to support the implied finding of the jury.

Finally, it is argued that errors in instructions given and refused require a reversal of the judgment. This argument is likewise without merit. Appellant complains that the trial court erred in instructing the jury that the articles sued

upon were defamatory and that this instruction was in effect an instruction that the language sued upon was false as a matter of law. We do not so construe this instruction. It is not stated therein that the publications were false. The jury was, in effect, instructed that a libelous statement was one not only defamatory but also false and unprivileged and that it was for the jury to decide whether the statements were false and unprivileged.

 It is argued that the court erred in instructions respecting "aspersive attack" on public officers and in denying "(any) right wrongfully to impute dishonesty" to such officers. The instruction complained of in this connection is stated by appellant, in part, as follows:

"No one, of course, has a right wrongfully to impute dishonesty to [any public officer, including any of the plaintiffs] . . . The conduct of public officers being open to public criticism, it is for the interest of society that their acts may be freely published with fitting comment or strictures. This right does not warrant aspersive attack on the motives or character of the officer."

The word "wrongfully" is variously defined as meaning illegally, or without right; in a wrong manner; unjustly, in a manner contrary to the moral law or to justice; injuriously, in violation of right, or tortiously; or without authority of law. (101 C.J.S. 643.) "Aspersive" is defined in Webster's International Dictionary as "defamatory, slanderous." The record shows that the quoted language is but part of an instruction in which the court instructed as follows:

"To recapitulate, if you find from the evidence that as to any plaintiff, the defamatory statements published by the defendant as set forth in the complaint were true, as I have defined truth to you, then you must find for the defendant and against such plaintiff. If you find from the evidence that as to any plaintiff, the statements made by the defendant were published without actual malice or that he had probable cause for believing and did in good faith believe the said statements to be true, then your verdict must be against such plaintiff and in favor of the defendant, and this is the case even though you find said statements to be false.

"On the other hand, if you find from the evidence as to any plaintiff that the defendant in making said defamatory statements was actuated by actual malice and also that the said defamatory statements were false, then you must find in favor

of such plaintiff and against the defendant, and award him such damages as you find him to be entitled to.''

The use of the words ''wrongfully'' and ''aspersive'' in the instruction, when it is considered in its entirety, does not constitute reversible error.

Appellant claims that the court erred in instructing the jury as follows:

''An inference of malice may be based upon the contents and tenor of the defamatory publication itself. While one may on a privileged occasion and without malice publish to interested persons a statement that is in fact false, if he honestly believes it to be true, having probable cause so to believe, he is not by this rule given a license to overdraw, exaggerate or color the facts. The manner of statement is material upon the question of malice and if the facts believed by the defendant to be true are exaggerated, overdrawn or colored to the detriment of the plaintiffs and are not stated fully and thoroughly with respect to the plaintiffs, you, the jury, may properly consider these circumstances as tending to prove actual malice.''

Appellant claims that this instruction permitted the jury to draw an inference of malice crucial to the case from mere negligence or carelessness in expression and wording. We are not in accord with this argument, for the court merely told the jury that if the facts believed by the defendant to be true are exaggerated, overdrawn or colored and are not stated fully and thoroughly with respect to the plaintiffs that *they might consider these circumstances as tending to prove actual malice.* (Italics ours.)

Appellant argues that the court erred in requiring probable cause to be such as would, not merely might, lead a reasonable man to believe as defendant did. This argument is likewise without merit. The court in this connection instructed the jury that

''The burden is on the plaintiff to prove actual malice on the part of defendant, and also to prove that he had no probable cause for believing and did not in good faith believe the defamatory statements to be true.

''Probable cause means that the defendant was in possession of facts which would have led a reasonable person so situated to entertain an honest belief maintained in good faith that the statements made were true. Whether the defendant was thus actuated by actual malice and whether he had proba-

ble cause to believe and did in good faith believe the defamatory statements to be true are questions of fact for the jury.''

▆▆▆▆ Appellant argues that the court erred in refusing to give certain offered instructions. However, the jury was instructed that libel is a false and unprivileged publication by writing or printing, which exposes any person to hatred, contempt, ridicule, obloquy or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation; that the publications were defamatory; that ''In justification the defendant has interposed (1) the defense that the defamatory words in each count of the complaint in their natural and ordinary meaning are true in substance and in fact and (2) that the publication in each case was privileged. There can be no recovery against the defendant for the publication of an article which was true and there can be no recovery against the defendant for the publication of an article which was privileged;'' that the burden of proof of truth was on defendant; that the articles were published on a privileged occasion, and were, therefore, privileged unless published with actual malice; that the burden was on the plaintiffs to prove actual malice and also to prove lack of probable cause, and that the defendant did not in good faith believe his charges to be true; that hatred or ill will induced by a good faith belief in the truth of the charges did not constitute actual malice. The right of free speech was recognized. Malice and privileged communications were defined.

The instructions, when considered together, fully and fairly informed the jury as to the issues and law involved and no reversible error appears by reason of the court's failure to give other offered instructions.

▆▆▆▆ Appellant claims error in the exclusion of two of his letters, dated March 12, 1952, and January 2, 1957; two newspaper articles; the testimony of two real estate agents as to customary terms in subdivision sales; and the alleged denial of a jury view of certain real estate. The two letters added nothing to Gilloon's own testimony and did not tend in any way to establish either truth or lack of malice. The newspaper articles were offered to show that the local press, close to the scene, discussed Gilloon's publications on their merits and did not treat them as malicious attacks on anyone. Obviously, there was no error in excluding this evidence and there was no error in the exclusion of the testimony of the real estate agents. Appellant sought to show by this testimony

his understanding of the terms customary in subdivision sales in order to explain one of the bases for his opinion of the terms of the Ford contract.

Appellant claims that the court refused his request that the jury be taken, at his expense, to the property involved in the Ford contract. However, where, as here, the condition of the property had changed since the relevant time, it was peculiarly within the discretion of the trial court to deny appellant's request. (*Parsell* v. *San Diego Consol. G. & E. Co.*, 46 Cal.App.2d 212, 217 [115 P.2d 539].)

No prejudicial error resulted in the trial court's denial of appellant's request for special interrogatories and verdicts. This, likewise, was a matter within the discretion of the trial judge and nothing appears herein to indicate that the denial of appellant's request was an abuse of discretion. (*Ferro* v. *Citizens Nat. Trust & Sav. Bank*, 44 Cal.2d 401, 414 [282 P.2d 849].)

Appellant also objects to the verdicts on the ground that the ratio between the general damages and the punitive damages indicated confusion on the part of the jury. This objection is without merit. The rule that the exemplary should bear a reasonable relation to the actual damages is only for the purpose of guarding against excess, and there is no fixed ratio by which to determine the proper proportion between the two classes of damages. (*Finney* v. *Lockhart*, 35 Cal.2d 161, 164 [217 P.2d 19].)

The record shows that demand for retraction was served on the publishers of the articles involved and appellant contends that in order to recover general or punitive damages, respondents should have served upon him a demand for retraction as required by section 48a of the Civil Code. We are not in accord with this contention. Section 48a of the Civil Code, subdivision 1, provides as follows:

"*Special damages; notice and demand for correction.* In any action for damages for the publication of a libel in a newspaper, or of a slander by radio broadcast, plaintiff shall recover no more than special damages unless a correction be demanded and be not published or broadcast, as hereinafter provided. Plaintiff shall serve upon the publisher, at the place of publication or broadcaster at the place of broadcast, a written notice specifying the statements claimed to be libelous and demanding that the same be corrected. Said notice and demand must be served within 20 days after knowledge of

the publication or broadcast of the statements claimed to be libelous.''

This section clearly provides that the demand specified be made on the ''publisher'' at the place of publication. In *Farr* v. *Bramblett*, 132 Cal.App.2d 36, 44 [281 P.2d 372], the demand was not served on the publisher pursuant to section 48a but was addressed to the editors of the newspapers, without any mention of the publishers, and the court concluded that no demand in accordance with said section was made. As is said in *Pridonoff* v. *Balokovich*, 36 Cal.2d 788, 791 [228 P.2d 6]:

''Reporters, columnists, authors, critics, editors, and the publisher are all participants in newspaper publications. When error is made, however, it is the publisher who has power to make correction. In providing for the substitution of a retraction for general and exemplary damages it was reasonable, therefore, for the Legislature to provide that the notice should be served upon him. The retraction provides as adequate a substitute for general and exemplary damages in the case of a suit against the author as in one against the newspaper publisher himself.''

We have examined and considered the other points raised by appellant in his brief and find no errors therein justifying a reversal of the judgment herein.

Judgment affirmed.

Griffin, P. J., concurred.