[S. F. No. 22643.   In Bank.   May 14, 1969.]

FIELD RESEARCH CORPORATION et al., Petitioners,
v. THE SUPERIOR COURT OF THE CITY AND
COUNTY OF SAN FRANCISCO, Respondent; WIL-
LIAM P. PATRICK, Real Party in Interest.

Haizlip, Ring, O'Donnell & Moore and David D. Ring for
Petitioners.

No appearance for Respondent.

Belli, Ashe, Ellison, Choulos, Cone & Harper, von Berold-
ingen, Rohde & Noonan and James D. Rohde for Real Party
in Interest.

TRAYNOR, C. J.—Petitioners Field Research Corporation
and its president, Mervin D. Field, seek a writ of mandate to
compel the Superior Court of the City and County of San
Francisco to vacate its order granting partial summary judg-
ment in an action for damages for defamation. (Code Civ.
Proc., § 437c.)  ██  The court's order is not appealable.
Since petitioners have no "plain, speedy, and adequate
remedy, in the ordinary course of law," and since the court
erred in refusing to permit petitioners to proceed to trial on
the issue of general and exemplary damages, the writ will
issue. (Code Civ. Proc., § 1086; *Souza & McCue Constr. Co.* v.
*Superior Court* (1962) 57 Cal.2d 508 [20 Cal.Rptr. 634, 370
P.2d 338]; *Dowell* v. *Superior Court* (1956) 47 Cal.2d 483,

486 [304 P.2d 1009]; 3 Witkin, Cal. Procedure (1954) pp. 2541-2542.)

Petitioners' complaint against William P. Patrick, real party in interest herein, alleged: Mervin D. Field is the president of Field Research Corporation, which is engaged in devising and conducting public opinion polls and disseminating the results thereof to subscribers. One such poll, released in February 1966 and bearing Mervin D. Field's name, indicated the degree of public preference for three Republican gubernatorial candidates, Ronald Reagan, George Christopher, and William P. Patrick. On five specified occasions Patrick stated in press conferences or interviews with broadcasting media that the foregoing poll was inaccurate and dishonest.[1]

The complaint alleged that Patrick's statements were false and made with malice and that petitioners were therefore entitled to recover special, general, and exemplary damages.

Patrick moved for partial summary judgment. Since the statements complained of in paragraphs V, VI, and VII had been communicated to the public by news media and since no demands for correction had been served on the various media

___

[1]The complaint alleged that Patrick made the statements to representatives of newspaper or broadcasting media with the intent that they be communicated to the public. The statements complained of were set forth in paragraphs, which the parties stipulated should be the basis for five separate causes of action, as follows:

Paragraph IV: ''I believe this poll was paid for by George Christopher and his forces. . . . I wonder who paid for it . . . I think we would find a very strong Christopher influence. . . . I'm of the knowledge that polls can be purchased.''

Paragraph V: '' [The February poll] was corrupt. . . . The poll was bought and paid for by George Christopher for $16,000. . . . The poll deliberately misrepresented my standing. . . .''

Paragraph VI: ''I think that [the February poll] was purchased by forces supporting Mr. Christopher and I can't at this time prove this but I again have some reliable rumors and I think that this was the case.''

Paragraph VII: ''[T]he poll was dishonest. I think it was designed to tie in with a deal made by George Christopher and Reagan last June . . . there is some indication that it has been [rigged] . . . I have rumors from a very reliable source[s] that it was and that [Christopher] or his campaign war chest paid $16,000 to have the poll favor him . . . and this is dirty politics.''

Paragraph VIII does not quote Patrick but recites that he stated that George Christopher's forces paid Mervin D. Field $16,000 to make Christopher look good in the California Poll and that Patrick stated that a good friend had told him this.

Although the complaint alleged that all five statements were made with the intent that they be communicated to the public, communication was only alleged with regard to the statements set out in paragraphs V and VI. The parties stipulated that the statements set out in paragraph VII were so communicated.

that published the statements, the trial court granted Patrick's motion on the ground that petitioners were precluded from recovering general or exemplary damages for those statements by section 48a of the Civil Code.[2]

The petition presents three questions: Does section 48a protect third parties not engaged in the news dissemination industry whose statements are reported to the public by newspaper, radio, or television? Is the section constitutional if so applied? In any event, may petitioners recover general and exemplary damages for defamatory statements published to representatives of news media that did not thereafter publish the statements to the public even though other news media did publish the statements? Since we must answer the first question in the negative we do not reach the other two questions.

Neither the language of the statute nor such extrinsic aids as are available make clear whether or not section 48a applies to third parties not engaged in the business of disseminating news. It was enacted in 1945, replacing a similar statute of equal ambiguity.[3] Section 48a closely resembles, and was probably patterned after a Minnesota statute (Minn.Gen.Stat. 1913, § 7901; now Minn.Stat., § 548.06; see, *Uhlman* v. *Farm Stock & Home Co.* (1941) 126 Minn. 239 [148 N.W. 102, 103, Ann.Cas. 1915D 888]; *Anderson* v. *Hearst Publishing Co.* (S.D.Cal. 1954) 120 F.Supp. 850, 853), which applied only to the news media and not to third parties whose statements were communicated to the public via the news media. (*Lydiard* v. *Wingate* (1915) 131 Minn. 355 [155 N.W. 212, 213].)

The language of section 48a indicates that the California

---

[2] "1. In any action for damages for the publication of a libel in a newspaper, or of a slander by radio broadcast, plaintiff shall recover no more than special damages unless a correction be demanded and be not published or broadcast, as hereinafter provided. Plaintiff shall serve upon the publisher, at the place of publication or broadcaster at the place of broadcast, a written notice specifying the statements claimed to be libelous and demanding that the same be corrected. . . ."

"2. If a correction be demanded . . . and be not published or broadcast . . . in said newspaper or on said broadcasting station . . . plaintiff . . . may recover general, special and exemplary damages. . . ."

. Television broadcasts are included within the meaning of the term "radio broadcasts" as used in section 48a. (Civ. Code, § 48.5, subd. (4).)

[3] (Stats. 1931, ch. 1018, p. 2034, § 1.) The 1931 statute applied to "any action for damages for the publication of a libel in a newspaper"; provided for service of a request that the offending material be "withdrawn," such service to be made on the "publisher at the place of publication"; and provided for the recovery of "actual, special and exemplary damages" if the correction were not properly published in "said newspaper."

statute, like the Minnesota statute, does not apply to third parties who are not participants in the publishing or broadcasting enterprise. Although the word "publication" in the first sentence of that section is used in its legal sense to mean the communication of any defamation,[4] the second sentence provides that the demand for correction shall be served upon the "publisher" or "broadcaster" and clearly refers to the owner or operator of the newspaper or radio station, rather than the originator of the defamatory statements. (*Pridonoff* v. *Balokovich* (1951) 36 Cal.2d 788, 791 [228 P.2d 6].)

It does not follow, however, that because the newspaper publisher or radio broadcaster must be served with the demand for correction, section 48a applies only in those situations in which the publisher or broadcaster is himself the defendant or himself originated the defamatory statements.

In *Werner* v. *Southern Cal. etc. Newspapers* (1950) 35 Cal.2d 121, 125-134 [216 P.2d 825, 13 A.L.R.2d 252], we held that section 48a could limit its protection to those who engage in the immediate dissemination of news on the ground that the Legislature could reasonably conclude that such enterprises are most often subject to unwarranted claims for excessive damages in defamation suits, that they cannot always check their sources for accuracy and their stories for inadvertent publication errors, and that such enterprises are peculiarly well situated to publish effective retractions.

Subsequently, in *Pridonoff* v. *Balokovich, supra,* we recognized that the purpose of section 48a could be circumvented if the section were limited to newspaper publishers and radio broadcasters, and we therefore held that the section protected those who participated in the publication or broadcast, including reporters, columnists, authors, critics, and editors. Other-

---

[4]In *Pridonoff* v. *Balokovich* (1951) 36 Cal.2d 788, 791 [288 P.2d 6], we emphasized the potentially unlimited application of the first sentence of section 48a, but we held only that the section applied to "participants" in newspaper publications as well as to the publishers themselves. (See, *Mercado* v. *Hoefler* (1961) 190 Cal.App.2d 12, 18-19 [11 Cal.Rptr. 787] [person whose statements are made to a reporter and subsequently published is not protected by § 48a]; *White* v. *Valenta* (1965) 234 Cal. App.2d 243, 247-248 [44 Cal.Rptr. 241, 13 A.L.R.3d 1271] [§ 48a not applicable to one who merely intrudes upon a live television broadcast]; *Comer* v. *Louisville & N.R. Co.* (1907) 15 Ala. 622 [44 So. 676, 13 L.R.A. N.S. 525] [statute similar to § 48a held not applicable to advertisers].) To the extent that *Farr* v. *Bramblett* (1955) 132 Cal.App.2d 36 [281 P.2d 372], *Larrick* v. *Gilloon* (1959) 176 Cal.App.2d 408 [1 Cal.Rptr. 360], and *Howard* v. *Southern Cal. etc. Newspapers* (1950) 95 Cal.App.2d 580 [213 P.2d 399], would extend the application of section 48a to nonparticipants in publishing and broadcasting enterprises, they are disapproved.

wise, that section would protect, not those engaged in the rapid dissemination of news, but merely those who owned or operated the facilities for such dissemination; it would protect, not a special form of news reporting, but a special form of investment. If without first demanding and being refused a retraction, plaintiffs could reach behind the publisher or broadcaster and sue instead the offending reporter or other participant, section 48a would serve little purpose and would actively discourage the very free and rapid dissemination of news it seeks to encourage.

Furthermore, as we noted in *Pridonoff,* there is good reason for the section to designate the publisher or broadcaster as the party on whom notice to retract must be served. (*Pridonoff* v. *Balokovich, supra,* at p. 791; see *Werner* v. *Southern Cal. etc. Newspapers, supra,* at p. 133.) With respect to the defamations that their employees or other participants have caused to be published or broadcast, it is only the publisher or broadcaster who has the power effectively to correct or retract. When a defamatory statement authored by a participant in a publishing or broadcasting enterprise has been published by a newspaper or broadcasting station, it is largely the authority and reputation of the paper or station that gives the statement its credibility. Indeed, many news stories and editorials disseminated by either enterprise do not reveal the identity of the author and are accepted by the public as statements of the enterprise itself. Even when the participant is identified, the weight that the public will attach to his statement may be determined largely by the reputation for truth and impartiality that the enterprise itself enjoys.

None of the reasons for applying section 48a to participants in news media apply to Patrick. At the time he made the statements complained of he was a private citizen and candidate for public office and not a participant in a publishing or broadcasting enterprise. Patrick, as well as the statements he made, were themselves news. The fact that he was seen and his statements heard and recorded by representatives of the news media does not make him a disseminator of news any more than any other person whose activities or utterances are reported by the media thereby becomes a disseminator of news. We realize, of course, that the news value of Patrick's allegations was twofold. He made his accusations as a candidate and public figure. If the charges were true, it would certainly be news that the Field Poll had been "bought." There is a significant difference, however,

between one who occasionally discovers and makes public an item that is newsworthy and one who, as a daily occupation or business, collects, collates, evaluates, reduces to communicable form, and communicates the news. It is these latter activities that the Legislature sought to protect by section 48a.

The newspapers, radio stations, and television stations that reported Patrick's statements, and on whom notice to retract would have had to be served if section 48a were applicable, could not have corrected or retracted the statements effectively. The media could hardly be required to deny that Patrick made the statements in question, and indeed may have had an independent privilege to publish them.[5] At most they could disclaim any responsibility for them. Since they could not speak for Patrick, however, such disclaimers would not mitigate the sting of the alleged defamation.

Since section 48a does not apply to Patrick, the trial court erred in granting his motion for partial summary judgment.

Let a peremptory writ of mandate issue directing the Superior Court of the City and County of San Francisco to vacate its order of October 14, 1968, in the case of *Field* v. *Patrick,* action No. 564926, and to enter an order denying the motion of defendant therein for partial summary judgment.

McComb, J., Peters, J., Tobriner, J., Mosk, J., Burke, J.. and Sullivan, J., concurred.

---

[5]See Civil Code, sections 47, subdivisions 3-5, 48.5. For examples of situations where the author of a story and the publisher possess different privileges, see *Davis* v. *Hearst* (1911) 160 Cal. 143 [116 P. 530]; *Graybill* v. *DeYoung* (1903) 140 Cal. 323, 328-329 [73 P. 1067]; *DiGiorgio Corp.* v. *Valley Labor Citizen* (1968) 260 Cal.App.2d 268 [67 Cal. Rptr. 82].