Filed 12/17/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| DEEPAK KALPOE et al., | No. B246154 |
| Petitioners, | (Super. Ct. No. BC363201) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| PHILLIP C. MCGRAW, et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS in mandate.  William A. MacLaughlin, Judge.  Petition denied.

Cremer, Spina, Shaughnessy, Jansen & Siegert, Kristina M. Beck, William J. Cremer (pro hac vice), Joshua D. Yeager (pro hac vice) and I. Brian Marquez (pro hac vice); Girardi Keese, Thomas V. Girardi and Graham B. Lippsmith for Petitioners.

No appearance for Respondent.

Ford, Walker, Haggerty & Behar, William C. Haggerty and Neil S. Tardiff; Jackson Walker, Charles L. Babcock and Nancy W. Hamilton for Real Parties in Interest.

_____

Deepak Kalpoe and Satish Kalpoe (individually referred to by their first names, collectively referred to as petitioners) filed a petition for writ of mandate after the trial court granted a motion in limine brought by Phillip C. McGraw, CBS Paramount Domestic Television, and Peteski Productions, Inc. (collectively real parties).

*FACTUAL BACKGROUND*

Petitioners, residents of Aruba, were questioned in connection with the 2005 disappearance of Natalee Holloway, an American teenager on a high school trip to Aruba. McGraw is the host of a television show (the Show) produced by Peteski Productions Inc. (Peteski) in association with CBS Paramount (CBS) and broadcast on a national television network.

Real parties hired a private investigator, Jamie Skeeters, to travel to Aruba in the summer of 2005 to investigate Holloway's disappearance. Skeeters arranged to meet with Deepak by representing that he would help exonerate him. Skeeters secretly recorded and videotaped the meeting with Deepak. During the meeting, Skeeters asked Deepak if he and Satish had sex with Holloway the night she disappeared.

On September 15, 2005, real parties broadcast an episode of the Show which was devoted entirely to Holloway's disappearance. It was the first episode of the 2005 fall television season. The videotape showed that when asked by Skeeters, Deepak indicated that Holloway had sex with him and Satish.

After the episode aired, Deepak claimed he had not consented to the videotaping and recording of the meeting, and had not known that Skeeters was recording it. He also claimed that when Skeeters asked if Holloway had sex with him and his brother, he responded "No," shaking his head, and that the videotape played on the Show had been manipulated.

2

*PROCEDURAL BACKGROUND*

On December 13, 2006, petitioners filed a complaint alleging several causes of action against real parties.[1] A First Amended Complaint was filed on February 22, 2008. It contains causes of action for defamation, defamation per se, invasion of privacy, negligent and intentional infliction of emotional distress, fraudulent misrepresentation and deceit, negligent misrepresentation and deceit and civil conspiracy.

In October 2011, real parties filed a motion in limine ("Motion in Limine No. 1") seeking to bar petitioners from introducing any evidence at trial regarding general or punitive damages for defamation, defamation per se, false light, negligent and intentional infliction of emotional distress.[2] The motion was based on Civil Code section 48a (further statutory references are to the Civil Code) which requires that a plaintiff must demand a correction or is limited only to recovering special damages, as defined by the statute. Real parties argued that because petitioners had not demanded a correction, they could not introduce evidence of general or exemplary damages. Petitioners did not dispute that they did not demand a correction. The motion was initially heard on August 24, 2012, along with several other motions in limine, and the court took the matter under submission. At a continued hearing, on November 13, 2012, the trial court granted real parties' motion.

Petitioners filed a motion for reconsideration which was denied on December 19, 2012.

Petitioners filed a petition for writ of mandate with this court on January 14, 2013. On January 31, 2013, we issued an order to show cause to the superior court

---

[1] Skeeters was employed by Security Consultant Services and they were both named as defendants. Skeeters passed away in 2007, and his wife and executrix of his estate was substituted in as a defendant. In 2009, all claims against Skeeters and Security Consulting were dismissed.

[2] Real parties made several motions in limine which were discussed at the same hearing.

3

directing a written return to be filed by real parties in interest and allowing petitioners to file a reply.

*DISCUSSION*

Section 48a, enacted in 1931 and amended in 1945, provides in pertinent part that "1. In any action for damages for the publication *of a libel in a newspaper, or of a slander by radio broadcast,* plaintiff shall recover no more than special damages unless a correction be demanded and be not published or broadcast, as hereinafter provided. Plaintiff shall serve upon the publisher, at the place of publication or broadcaster at the place of broadcast, a written notice specifying the statements claimed to be libelous and demanding that the same be corrected. Said notice and demand must be served within 20 days after knowledge of the publication or broadcast of the statements claimed to be libelous." (Italics added.)

The statute goes on to define "special damages" as those damages suffered in respect to plaintiff's property, business, trade, profession or occupation including monies expended as a result of the alleged libel (§ 48a, subd. 4(b)) and "general damages" as those for loss or reputation, shame, mortification and hurt feelings. (§ 48a, subd. 4(a).)

Prior to this time, common law provided that a plaintiff could recover general damages without proving actual injuries. (*Kapellas v. Kofman* (1969) 1 Cal.3d 20, 30.)

In 1949, section 48.5 was enacted to include "both visual and sound radio broadcasting" within the definitions of "radio," "radio broadcast" and "broadcast" as used in the division of the Civil Code containing section 48a.

Petitioners contend the trial court erred in applying section 48a to claims arising from or relating to the Show because the statute is only meant to apply to media which are engaged in the business of immediate dissemination of news. We examine the words of the statute, the case law, and the facts presented by the parties in determining whether the trial court's ruling was correct in holding that petitioners were subject to the retraction requirements of section 48a.

4

1. *Statutory Interpretation*

We first examine the language of the statutes. Real parties argue that the plain language of sections 48 and 48.5 does not distinguish between types of the content in "visual and sound radio broadcasting," and thus the retraction requirement applies to all television shows whether or not they are engaged in the immediate dissemination of news.

In interpreting a statute, the objective is to ascertain the Legislature's intent and thereby effectuate the purpose of the statute. (*Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1147; *Smith v. Superior Court* (2006) 39 Cal.4th 77, 83.) To ascertain that intent, we begin with the statutory language, giving the words their usual and ordinary meaning. (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340.) "If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs." (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272; see also *Smith v. Superior Court, supra*, 39 Cal.4th at p. 83.)

"If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we '"select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences."'" (*Day v. City of Fontana, supra,* 25 Cal.4th at p. 272.)

We do not construe a statute in isolation, but rather construe in context with reference to the entire scheme of law of which it is part so that the whole scheme may be harmonized and still be effective. (*Landrum v. Superior Court* (1981) 30 Cal.3d 1, 14.) We presume that when enacting a statute, the Legislature was aware of existing laws and judicial decisions in effect at the time and intended to maintain a consistent body of rules. (*Stone Street Capital, LLC v. California State Lottery Com.* (2008) 165 Cal.App.4th 109, 118.)

Given this framework, the plain language of section 48a only applies to "publications of a libel in a newspaper or of a slander by radio broadcasts." Section 48a

does not qualify what "type" of newspaper or radio broadcast, nor does it mention the content of a particular newspaper or broadcast. Similarly, section 48.5 does not qualify the type of visual or sound broadcast which comes under its purview. Thus, real parties contend, there is no ambiguity in the section, and there is no necessity to look at extrinsic sources such as legislative history.

We note that reviewing courts may examine the legislative history of an unambiguous statute if it supports or bolsters their interpretation of that statute. (*In re Gilbert R.* (2012) 211 Cal.App.4th 514, 519.) In any event, we find nothing in the legislative history of section 48a to alter our interpretation of its language. The first version of section 48a, enacted in 1931, included only newspapers. The 1945 amendment added radio broadcasts to the statute's reach. Nothing in the committee reports or communications from the governor's office shows any intent to limit the types of radio broadcasts to those engaged in the dissemination of breaking news. Nor is there anything in the legislative history of section 48.5 which indicates whether the statute was only meant to apply to certain types of visual or sound broadcasting.[3]

2. *Case law*

Despite the lack of reference to content in the plain language of the statutes, petitioners contend the case law interpreting section 48a shows an intent to limit the scope of the statute to only those publications and programs which disseminate breaking news.

In *Werner v. Southern California Associated Newspapers* (1950) 35 Cal.2d 121, the defendant published newspapers which reported that the plaintiff was a convicted felon. The plaintiff sued for libel and the defendant demurred to the complaint on the ground that plaintiff did not comply with section 48a. Plaintiff appealed from the order sustaining the demurrer on the grounds that section 48a violated his constitutional rights to free speech, equal protection and due process. The Supreme Court (Justice Traynor)

---

[3]    This is not surprising since television broadcasts in 1945 were likely less varied in scope than they are today.

6

discussed the basis for the retraction requirement.  It found no constitutional violation and determined that the Legislature could reasonably have concluded that the inclusion of only newspapers and radio broadcasts in section 48a was necessary and justified.  (*Id*. at p. 134.)  It stated, "In view of the complex and far-flung activities of the news services upon which newspapers and radio stations must largely rely and the necessity of publishing news while it is new, newspapers and radio stations may in good faith publicize items that are untrue but whose falsity they have neither the time nor the opportunity to ascertain.  The Legislature may reasonably conclude that the public interest in the dissemination of news outweighs the possible injury to a plaintiff from the publication of a libel, and may properly encourage and protect news dissemination by relieving newspapers and radio stations from all but special damages resulting from defamation, upon the publication of a retraction.  [Citation.]" (*Id*. at p. 128.)  The court went on to state: "Moreover, in balancing the danger of recoveries of excessive general damages against leaving plaintiffs with no effective remedy for injury to their reputations, the Legislature could properly take into consideration the fact that a retraction widely circulated by a newspaper or radio station would have greater effectiveness than a retraction by an individual and could thus class newspapers and radio stations apart."  (*Id.* at p. 133.)[4]

In *Pridinoff v. Balokovich* (1951) 36 Cal.2d 788, a daily newspaper published an article containing allegedly defamatory statements about a U.S. Embassy employee.  The employee sued the authors of the article but not the newspaper publisher.  (*Id*. at pp. 790-791.)  Justice Traynor again wrote for the Supreme Court, finding that the protection of section 48a extends to all those who participate in the allegedly defamatory publication including authors, editors and publishers.  (*Id*. at p. 791.)  The court held that because the plaintiff did not demand a retraction from the publisher, he could not recover general or exemplary damages from the author.  (*Ibid*.)

---

[4]    Although *Werner* was decided the year after section 48.5 became effective, it did not discuss the applicability of section 48a to "visual and sound radio broadcasting."

Almost 20 years later, the Supreme Court decided *Field Research Corp. v. Superior Court* (1969) 71 Cal. 2d 110. In that case, a gubernatorial candidate made statements in press conferences or interviews about a company engaged in conducting and disseminating public opinion polls, claiming that one of the polls released was inaccurate and dishonest. (*Id*. at pp. 112, 113-114.) In addressing the issue of whether the candidate was the proper party on whom to serve the retraction request, the court, again in an opinion authored by Justice Traynor, cited *Werner* and *Pridinoff,* noting "it is only the publisher or broadcaster who has the power effectively to correct or retract. . . . Indeed many news stories and editorials disseminated by either enterprise do not reveal the identity of the author and are accepted by the public as statements of the enterprise itself. Even when the participant is identified, the weight that the public will attach to his statement may be determined largely by the reputation for truth and impartiality that the enterprise itself enjoys." (*Id*. at p. 115.)

In *Burnett v. National Enquirer (*1983) 144 Cal.App.3d 991, a show business personality sued a weekly magazine, the National Enquirer, alleging that an item about her in a "gossip column" was false and libelous. The celebrity had demanded and received a retraction. A jury awarded her compensatory and punitive damages. The Enquirer appealed the amount of the judgment and contended that it was not excluded from the protection afforded by section 48a. The court noted that the Enquirer, although widely known as an entertainment publication with no current coverage of politics, sports or crime, called itself a "newspaper" and its staff "reporters." (*Id*. at pp. 999-1000.) Citing *Werner*, the trial court took into account the "the inability of newspapers to verify information while optimally disseminating news" and determined that the National Enquirer should not be characterized as a "newspaper." The court examined whether the Enquirer subscribed to news wire services, whether it attributed content to wire services, whether it provided current coverage of politics, sports and crime, whether its articles made reference to time, in particular with respect to when an event occurred, whether it generated stories on a day-to day basis, and whether there was significant lead time for the stories. (*Ibid.*) The court of appeal affirmed the judgment, determining that the

8

protection afforded by section 48a is limited to those publications "where the constraints of time as a function of the requirements associated with the production of the publication dictate the result." (*Id*. at p. 1004.)

In *Condit v. National Enquirer* (E.D. Cal. 2002) 248 F.Supp.2d 945, a former congressman's wife brought a libel action against the National Enquirer. In determining whether the Enquirer was a "newspaper," the federal district court cited *Field Research, supra,* 71 Cal.2d 110, noting that a news publication subject to section 48a "must function under such time constraints in its mode of operation that prevent accuracy checks or make it impractical to avoid inadvertent publication errors." (*Condit, supra,* 248 F.Supp.2d at p. 955.) Using the factors employed by the *Burnett* case, the court concluded that the Enquirer's overall content established that its primary focus was not "the very free and rapid dissemination of news [section 48a] seeks to encourage." (*Field Research, supra,* 71 Cal.2d at p. 115.) The fact that the Enquirer occasionally published significant breaking news was not dispositive. The record did not establish that the Enquirer was under pressure to publish news as it happened, "[n]or does it publish news under circumstances where it cannot confirm the accuracy and reliability of its information and sources. Rather the Enquirer appears to 'have the advantage of greater leisure in which to ascertain the truth of allegations before publishing them.' [Citation.]" (*Condit, supra,* 248 F.Supp.2d at pp. 958-959.) The court concluded the Enquirer did not qualify as a newspaper under section 48a. (*Id*. at p. 963.)

Petitioners contend that *Werner* and its progeny conclude the intent of the Legislature in enacting section 48a was to protect purveyors of breaking news, and thus the statute does not apply to the Show. Petitioners argue that we must go beyond the plain language of the statute because case law indicates that section 48a only applies to businesses engaged in the dissemination of news. They cite in particular to *Werner* and *Field Research*, which both discussed the intent of the Legislature to protect those who publish news under time constraints and are unable to ascertain the veracity of the reported news. However, none of those cases involved the interpretation of the meaning of a "visual or sound radio broadcasting." In addition, none of these cases squarely

9

addressed the question of whether only those media which cover news events are within the purview of section 48a.  *Werner* dealt only with the constitutionality of section 48a under equal protection and due process grounds.  It did not affirmatively conclude what the Legislature's purpose was in enacting the statute; only that the Legislature "could" have had a reasonable basis for classifying newspapers and radio stations apart from others.  (*Werner v. Southern California Associated Newspapers, supra,* 35 Cal.2d  at pp. 126, 128, 132-135.)

Werner, Pridinoff, Burnett and *Condit* all involve print publications, but focus on whether the publication can be considered a "newspaper" as used in the statute.  No books, whether fiction or non-fiction, trade journals, magazines or advertisement flyers are considered.  Even editorials in newspapers are included under the statute's reach.  (*Kapellas v. Kofman, supra,* 1 Cal.3d 20 and *Grillo v. Smith* (1983)144 Cal.App.3d 868.)  In *Gomes v. Fried* (1982) 136 Cal.App.2d 924, an editorial was published on the front page of a weekly newspaper with a photograph of a police officer with a caption which suggested that he was sleeping on duty.  (*Id.* at p. 935.)  The court of appeal concluded that the only possible defamatory portion of the article was the photograph with its caption.  (*Ibid.*)

The cases which focus on content seek to distinguish certain publications from newspapers by defining them as magazines and not "newspapers."  Thus the judicial interpretation stays true to the statute's literal language by including only those written publications which can be considered "newspapers" within its scope.

The question presented here is whether, in light of these cases, section 48.5 makes section 48a applicable to all television broadcasts, regardless of content.  While several cases have recognized the extension of section 48a to television broadcasts, none has directly addressed the issue of whether section 48a only applies to television broadcasts which engage in the immediate dissemination of news.

3. *Television Broadcast Cases*

We now examine the cases involving television broadcasts.

10

In *Anschutz v. Snepp* (2009) 171 Cal.App.4th 598, a sports arena owner sued over an investigatory television show that purported to be a news report about safety in public places. A request for a retraction was made but the court of appeal determined that a plaintiff must be named with specificity in the retraction demand so the media defendant knows who is objecting. The court also discussed the insufficiencies in the pleadings but did not discuss the applicability of section 48a to television programs.

In *Arno v. Stewart* (1966) 245 Cal.App.2d 955, in a television broadcast of one of a series of dance shows, the host referred to a singer as his "'buddy from the Mafia." (*Id.* at p. 958.) The singer demanded a retraction. After a jury trial which resulted in a defense verdict, the singer appealed. The issues raised in the appeal involved the propriety of the jury instructions and did not include anything about applicability of section 48a to television shows.

In *Mullins v. Brando* (1970) 13 Cal.App.3d 409, a guest being interviewed on a television talk show made statements about the actions of a group of police officers. A demand for a retraction was made by the police officers group. The issue on appeal was whether the statements were defamatory. The case did not discuss the applicability of section 48a.

In *O'Hara v. Storer Commc.* (1991) 231 Cal.App.3d 1101, a news report erroneously named a private citizen as a prostitute. The citizen made what was described as a "conditional request" for a retraction, and the court of appeal determined that the request did not qualify as a retraction under section 48a.

In *White v. Valenta* (1965) 234 Cal.App.2d 243, an automobile dealer chose to advertise his business by filming live commercials at his place of business. During one commercial which was currently being aired on television, an owner of an adjacent parcel of property stepped in front of the camera and uttered angry words at the dealer who was speaking. (*Id*. at pp. 244-245.) The automobile dealer sued the property owner for slander. A jury found the property owner liable for compensatory and punitive damages. The property owner appealed but the judgment was affirmed on appeal. (*Id*. at p.258.) Although the court of appeal held that the broadcast literally came within the purview of

11

section 48a (*id.* at pp. 247-248), it stated: "This case is not a proper vehicle for drawing sweeping parallels between persons whom section 48a protect in the newspaper business and those covered by it in the television field." (*Id.* at p. 248.)

In *Weller v. American Broadcasting Companies* (1991) 232 Cal.App.3d 991, a series of television broadcasts allegedly implied that an antique silver dealer had engaged in fraud. The case only addressed section 48a in terms of the sufficiency of the retraction. (*Id.* at pp. 1010-1011.)

None of these cases holds that "visual or sound radio broadcasting" refers only to radio or television programs which disseminate breaking news. The only case which discusses the content of television shows is a federal district court case, *In re Cable News Network* (N.D. Cal., 2000) 106 F.Supp.2d 1000.

In *Cable News Network*, the plaintiff brought a defamation lawsuit based upon statements made in two shows broadcast on a cable news network and a magazine article which was "inextricably intertwined" (106 F.Supp.2d at p. 1002) and marketed together with the shows. The district court noted, "At the time the statute was amended to cover television broadcasts the Legislature likely had not even contemplated magazine-style broadcasts such as those at issue here." The court held that due to the specific circumstances of this case, section 48a was applicable to the broadcasts. (*Id.* at p. 1002.) In its opinion, however, the court noted that the legislative history indicated the statute was enacted to protect "purveyors of breaking news" and that the California Supreme Court had applied the section based on a publication's role in disseminating breaking news, and not by its label as a newspaper or a magazine. (*Id.* at p. 1001, fn. 2, citing *Burnett, supra,* 144 Cal.App.3d 991.) However, it concluded that the plain statutory language makes section 48a applicable to all television broadcasts." (*Id.* at p. 1002.)

Nothing in these cases limits the type of television programs to which section 48a applies.

4. *Conclusion*

A close examination of the cases reveals the scope of section 48a is determined by the type of media involved, and not upon specific content. Therefore we cannot conclude

12

the statute only applies to visual and sound broadcasting which is engaged in the business of rapid and immediate dissemination of the news. The language of the statute clearly applies to all types of television shows. In the 64 years since the enactment of section 48.5, the Legislature has not acted to amend it. If the Legislature, in the future, wishes to amend the statute to apply only to visual or sound radio broadcasts which relate to the immediate and rapid dissemination of news, then we have no doubt it will do so. Until then, we are bound to follow the unambiguous terms of the statute. Therefore, since petitioners did not send a request for a correction, the trial court correctly granted the motion in limine of real parties to bar evidence at trial of general or punitive damages.

*DISPOSITION*

The petition is denied. Each party is to bear its own costs.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**

**SEGAL, J.**[*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.