Filed 10/6/20 Holstein v. Chen CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| C. DAVID HOLSTEIN,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>JOHN W. CHEN et al.,<br><br>    Defendants and Respondents. | G057134<br>(Consol. with G057437)<br><br>(Super. Ct. No. 30-2016-00894772)<br><br>O P I N I O N |

Appeals from a judgment of the Superior Court of Orange County, David R. Chaffee, Judge. Reversed.

Sims Law Firm, Selim Mounedji, Ralph F. Popelar and Brock Christensen, for Plaintiff and Appellant.

Rallo|Travieso, Arthur J. Travieso and Michelle K.L. Le, for Defendants and Respondents.

## INTRODUCTION

In the ongoing struggle to unclog congested trial court calendars, summary judgment can be a useful tool in weeding out those cases which may be resolved as a matter of law without the need for a lengthy or costly trial. But this tool cannot be used lightly as it is "a drastic measure that deprives the losing party of a trial on the merits[.]" (*McAlpine v. Norman* (2020) 51 Cal.App.5th 933, 938.) The initial burden to demonstrate the absence of a triable issue of material fact is on the moving party, and trial courts must hold the moving party to that burden.

Here, the trial court was too deferential to the moving parties, respondents John W. Chen (Dr. Chen) and Jeanette Johnson (Johnson) (collectively, respondents), prematurely shifting the burden of proof to the opposing party, appellant C. David Holstein (Dr. Holstein), and then holding him to a stricter standard of proof. We must reverse.

## FACTS

Drs. Holstein and Chen, with two others, shared a neurology practice called Orange County Neurological Medical Group, Inc. (OCNMG) and Dr. Holstein had an affiliation with Western Medical Center. In November 2014, Dr. Chen separated from OCNMG, resulting in a lawsuit in the Orange County Superior Court to resolve a financial dispute between the partners. (*Orange County Neurological Medical Group v. Chen* (2015, case No. 30-2015-00793666 (the Related Action).) On October 19, 2016, during discovery in the Related Action, Dr. Holstein's attorney took Johnson's deposition. She had been an assistant to Dr. Chen in OCNMG's Tustin office.

For Johnson, the deposition would prove fateful. She testified to her belief that Dr. Holstein was a bad doctor who was "milking the system" by submitting Medicare billing for patients he had not seen and she acknowledged she had sent an e-mail to a woman named Tova Klein on September 23, 2014 stating as much. In addition to Klein, Johnson claimed to have made similar statements about Dr. Holstein to her

parents, Alan and Elida Johnson, and another woman named Connie Aguirre. Johnson knew about Dr. Holstein's allegedly fraudulent practice because she had seen the charts of patients he had purported to examine with the same two sentences written on each. This was an indication to her that he had not undertaken a thorough examination - Dr. Chen, in contrast, customarily created five pages of notes per patient.

Dr. Holstein's attorney probed as to why she did not bring the issue up with Dr. Chen or otherwise try to intervene for the sake of patient safety rather than have vulnerable patients return to the care of a seemingly negligent doctor. Johnson responded: "Dr. Chen did try to communicate that with administration at the hospitals." She explained how Dr. Chen's position within the neurology department at Western Medical Center gave him oversight over physicians at the hospital and a channel through which he "communicated" with the administration "about Holstein's signature and other physicians that were not adequately doing their job." When asked how she knew this, she stated she was the one who "had to set time for him to go these committee meetings." A few moments later, Johnson stated she believed Dr. Chen had not "charge[d]" Dr. Holstein even though he was concerned about the conduct because "he didn't want it to seem like he . . . had a personal vendetta against him."

"So the welfare of the patient takes a back seat to his fight with Dr. Holstein?" counsel asked. Johnson replied "No. That's when he took it up with administration to see what would be the best way to handle the situation." Counsel then asked if Dr. Chen was the source of this information, to which Johnson responded in the affirmative. She explained that Dr. Chen had taken it up with the CEO of Western Medical Center, Suzanne Richards, but she did not know if any discipline had been administered as a result.

A little over two months after this testimony, both Johnson and Dr. Chen found themselves on the receiving end of the present lawsuit alleging defamation causes of action. In the initiating complaint, Dr. Holstein alleged Johnson had *not* filed a

3

complaint with Medicare about his alleged fraud, but simply told Klein, Aguirre, and her parents she had. As to Dr. Chen, Dr. Holstein alleged he had concocted a "fictional story" of having conveyed his concerns about Dr. Holstein to Richards and then communicated the story to Johnson, who repeated the story to others.

Eventually, Dr. Holstein decided he wanted to consolidate the defamation suit with the Related Action. So he filed a first amended complaint and a motion to consolidate on the same date. Libel was excised from the amended complaint and the only remaining defamation claim was for slander. Also excised was the allegation regarding Johnson's allegedly false claim to Medicare. Instead, the slander claim against her was simplified to two acts: (1) repeating Dr. Chen's "fictional" story to others and (2) telling others her concerns about the inadequacy of Dr. Holstein's patient notes. The slander claim against Dr. Chen did not change. Perhaps to boost his chances of consolidating the two lawsuits, Dr. Holstein added a breach of contract claim against Dr. Chen based on the separation agreement. The motion to consolidate was denied, and two months later, Dr. Holstein dismissed the breach of contract claim.

That left only the slander claim for resolution. Both Dr. Chen and Johnson filed motions for summary judgment making the following arguments: (1) neither of them made the statements alleged or republished any such statements to third parties, (2) the statements themselves were not defamatory, and (3) Dr. Holstein did not suffer any injury or damages as a result. Each filed a declaration in support of their own motion as well as their codefendant's motion.

Dr. Chen's declaration in support of both motions was identical – he denied having made statements to Richards about Dr. Holstein and thus claimed he would not have repeated any such story to Johnson or anyone else. In fact, he argued it would be detrimental to his interests to falsely accuse a partner in his own practice of misconduct.

In her declarations supporting both motions, Johnson claimed she had been misinterpreted. She attached her October 2016 deposition testimony as an exhibit to the

4

declarations, insisting she had not testified that Dr. Chen told her what he did or did not say to Richards, and he never told her any story about Dr. Holstein. She said Dr. Chen was her source for information because she worked for him and had assumed he would have brought up any concerns about Dr. Holstein in committee meetings she set for him.

The declaration submitted in support of her own motion contained an additional averment: She quoted verbatim the language of the first amended complaint describing her second defamatory statement and denied uttering those exact words.

In his opposition to the motions, Dr. Holstein pointed to Johnson's deposition testimony as an admission that Dr. Chen had indeed made the alleged statement. He also objected to both defendants' declarations as self-serving and unavailing. Even if the declarations were received, he contended, they merely raised a triable issue of fact as to whether Dr. Chen made the statements alleged. Assuming Dr. Chen made the statements, they were slanderous per se and he could reasonably have foreseen that Johnson would have relayed them to others. Regarding damages, Dr. Holstein argued defendants had not established a lack of damages, and even so, damages for slander per se are presumed.

In support of his opposition, Dr. Holstein attached Johnson's deposition testimony from the Related Action as well as later deposition testimony confirming that her previous testimony was true to the best of her knowledge. He also attached an excerpt from Dr. Chen's deposition in which he was confronted with e-mail evidence of Johnson's allegedly loose-lipped nature.

Neither defendant filed evidentiary objections in reply. Instead, they maintained Johnson's declarations merely clarified her testimony and should not be disregarded. As to damages, defendants contended Dr. Holstein was required to establish them because his pleading alleged "defamation" rather than explicitly alleging "defamation per se."

5

The trial court issued a tentative ruling granting the motion. It found the defendants' declarations sufficient to shift the burden to Dr. Holstein and found he had failed to meet his burden in response because the Johnson deposition testimony was hearsay not subject to the former testimony exception under Evidence Code sections 1290 through 1292. The trial court cited *L&B Real Estate v. Superior Court* (1998) 67 Cal.App.4th 1342, 1348 (*L&B*) on this point, which had not been cited by either side.[1] The court concluded the Johnson testimony was unclear because Johnson attributed no specific statement of fact to Dr. Chen and she identified no statement of fact she herself made to a third party. Because Dr. Holstein's claim required proof the defendants actually made the alleged statements, the trial court found their denials were dispositive if they could not be refuted. All of Dr. Holstein's objections to the declarations were overruled.

At the hearing, Dr. Holstein's counsel pointed out that neither defendant had objected to the Johnson testimony, and even if the hearsay objection was not waived, the testimony could come in as a party admission (Evid. Code, § 1220) or prior inconsistent statement (Evid. Code, § 1235). He also argued there was enough in Johnson's testimony to warrant a trial on the claim.

But judgment of dismissal was entered in August 2018, and Dr. Holstein timely appealed in December 2018. Though we do not have them in the record, we presume defendants filed memoranda of costs because Dr. Holstein filed a motion to tax them after judgment had been entered. In January 2019, the trial court entered an amended judgment which included statutory costs for both defendants. Dr. Holstein timely filed a separate appeal as to this amended judgment as well, and we have consolidated the two appeals for decision.

---

[1] As Dr. Holstein points out in his opening brief, after the ruling in the trial court, *L&B* was dealt a blow in *Sweetwater Union High School District v. Gilbane Building Company* (2019) 6 Cal.5th 931, 944-945 (*Sweetwater*). For reasons detailed below, we need not address the effect of the *Sweetwater* decision on *L&B*.

## DISCUSSION

Dr. Holstein's arguments on appeal fall into two categories. First, he believes respondents' evidence was both objectionable and insufficient to meet their moving burden on summary judgment. Second, even if their evidence was sufficient, he asserts Johnson's prior deposition testimony created a triable issue of material fact. He is right on both grounds.

**I.      Standard of Review**

We undertake an independent review of a ruling granting summary judgment, applying the same three-step process as the trial court. (See *AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064.) First, we identify the issues raised by the pleadings. Second, we assess whether the moving parties established facts negating those issues. Third, we determine whether the opposing party demonstrated a triable issue of material fact. (See *Live Oak Publishing Co. v. Cohagan* (1991) 234 Cal.App.3d 1277, 1287-1288.) "In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion." (*Swope v. Moskovitz* (1967) 253 Cal.App.2d 514, 516, disapproved on another ground in *Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1209-1210.)

**II.      Issues Raised by the Pleadings**

Because slander was the sole cause of action against them both, Dr. Chen and Johnson had only to negate one essential element of the claim. As we detailed above, both defendants aimed their fire at three elements of the claim – (1) whether they made the alleged statements, (2) whether the statements were defamatory, and (3) whether there were damages.

### A. Whether the Statements Were Made

In assessing the respondents' moving evidence, we must be mindful of the distinction between pleading and proving libel (written defamation) versus slander (oral defamation). ". . . [L]ess specificity is required in the pleading of slander, given that slander may 'be charged by *alleging the substance of the defamatory statement*' [citation] . . . [W]here the defendant may have superior knowledge of the precise words that were actually stated and on which a plaintiff is basing his or her claim, it makes sense to give the plaintiff more leeway to allege the 'substance' of the perceived wrong. 'It is obvious that a plaintiff, attempting to plead and prove an alleged slander which occurred when he was not present, has a far more difficult task *than when the defamation alleged is written, where it may be seen*. . . . [T]here is no requirement that, in slander, the pleading and [ultimate] proof must be identical in order for a plaintiff to recover.' (*Albertini v. Schaefer* (1979) 97 Cal.App.3d 822, 832 . . . .) However, even for purposes of slander, 'the disparagement set forth in the complaint must be *sufficiently close to the actual words proved* to acquaint a defendant with what he must defend against.' [Citation.]" (*Medical Marijuana, Inc. v. ProjectCBD.com* (2020) 46 Cal.App.5th 869, 893-894.)

Keeping these principles in mind, the Chen declarations and the Johnson declarations do not strike us as particularly forceful, though they contain statements resembling denials. Dr. Chen starts by emphatically asserting a point long since stipulated: he never reported Dr. Holstein to Richards. Therefore, he maintains, there would be no reason to tell anyone he had. This denial misses the mark. It is not a denial of having said anything to Johnson, but rather an attempt to undercut the *rationale* for having said anything to Johnson – quite a different thing. It resembles the insistence of the television villain, confronted with a theory of the case against him who denies nothing but instead says, "You can't prove any of this." Later in the declaration, he questions the lack of specificity in Dr. Holstein's pleading, and speculates it is because he

"did not make the alleged statement." As already stated, a plaintiff bringing a slander claim can be excused for being unable to allege an exact statement.

Nevertheless, Dr. Chen's averment is sufficient to constitute a denial. And the denial in Johnson's declaration – that Dr. Chen never "told [her] about what he did or did not say to . . . Richards" – is clear enough.

But the deposition testimony Johnson submitted in support of both motions creates a murkier picture. She testified Dr. Chen had "tr[ied] to communicate . . . with administration" at Western Medical Center regarding his concerns about Dr. Holstein and that she knew this through Dr. Chen. The testimony itself creates a triable issue of material fact as to what information she received from Dr. Chen and how she knew that Dr. Chen had "tried to communicate with administration" about Dr. Holstein.

Johnson attempts in her declaration – unsuccessfully, we think – to clarify her testimony. First, she claims she merely assumed from Dr. Chen's scheduled committee meetings that he relayed concerns about Dr. Holstein at those meetings. But her assumption is posited on information to which we are currently not privy. In the deposition, Johnson seemed quite certain that Dr. Chen had raised the topic to the administration. Indeed, she *volunteered* the information when asked why she herself had never raised any concerns. So her testimony on this point did not come across as mere assumption or speculation on her part. Moreover, she could not have known from the mere existence of committee meetings what topics were being discussed unless she was present for the meetings or had more information about what was on the agenda. What was that information and from where (or whom) did she get it? She does not say.

Second, she cautions us not to read too much into her having gotten information from Dr. Chen. Indeed, she says, all of her work-related information came through him because she worked under him. But this does not answer our fundamental question: what was the information she got from Dr. Chen? In what form did it come to her? When? We are left to guess.

9

Her deposition testimony also trips her up as it pertains to the second defamatory statement she is alleged to have made. The denial in her declaration regarding this statement seems hollow given her concession that, in her deposition, she wrote that Dr. Holstein was "milking the system." She omitted to attach – strategically, we suspect - additional pages of her deposition testimony that would have revealed in what context she wrote that Dr. Holstein was "milking the system."[2] Rather than conclusively refute Dr. Holstein's allegation, Dr. Chen's and Johnson's moving papers raise – without any help from Dr. Holstein – a triable issue of material fact as to whether they made the alleged statements.[3]

## B. Whether the Statements were Defamatory

Nor did the respondents meet their moving party burden to show the alleged statements were not defamatory. Slander encompasses the utterance of a false statement which "upon its face has a natural tendency to injure a person's reputation either generally or with respect to his occupation." (*Mercado v. Hoefler* (1961) 190 Cal.App.2d 12, 18; see also Civ. Code, § 46, subd. (3).) "A statement is not defamatory unless it can reasonably be viewed as declaring or implying a provably false factual assertion (*Franklin v. Dynamic Details, Inc.* (2004) 116 Cal.App.4th 375, 385 . . .), and it is apparent from the 'context and tenor' of the statement 'that the [speaker] seriously is maintaining an assertion of actual fact.' (*Weller v. American Broadcasting Companies., Inc.* (1991) 232 Cal.App.3d 991, 1000–1001 . . . .)" (*Carver v. Bonds* (2005) 135 Cal.App.4th 328, 344.)

---

[2] Dr. Holstein submitted the omitted deposition pages in opposition to Johnson's motion, and the omitted pages clearly demonstrate Johnson told third parties he was a "terrible doctor" and "milking the system." Indeed, she used the phrase "milking the system" to describe Dr. Holstein in her e-mail to Tova Klein, and her testimony referenced that e-mail. Litigants are well-advised not to hide the ball from the trial court on summary judgment. Sooner or later, someone will find it.

[3] This obviates any need to address Dr. Holstein's argument regarding his evidentiary objections and the rule stated in *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21.

Given that it is unclear from the record what Dr. Chen said to Johnson to begin with, it follows as night the day that we are unable to ascertain as a matter of law whether his alleged statement was defamatory. But the evidence supports the inference Dr. Chen told her he had raised concerns about Dr. Holstein with the administration, and this statement unquestionably implies a provably false assertion of fact. It implies that Dr. Chen reported Dr. Holstein. Either Dr. Chen reported him or he did not. And all are agreed that he did not – thus making the statement false.[4]

The characterization of Dr. Holstein by Johnson as a "terrible doctor" who was "milking the system" is also reasonably susceptible of a defamatory meaning. Johnson contends this statement was not alleged in the first amended complaint, and even if it were, it was merely an opinion. But, as we already noted, an opinion is actionable if it implies a provably false assertion of fact. (*See Paterno v. Superior Court* (2008) 163 Cal.App.4th 1342, 1356.) In her deposition, when she was asked what she meant by "milking the system," Johnson stated she had filed a complaint with Medicare regarding Dr. Holstein's alleged practice of charging for patients he had not seen, and she observed from his patient charts that he was not properly documenting examinations.

From this, we glean two things. First, the "milking the system" comment was not separate from Johnson's assessment of Dr. Holstein's recordkeeping practices – they were both part and parcel of the same overall observation. Thus, it does not matter whether Dr. Holstein explicitly included the "milking the system" comment in his amended pleading. Second, the "milking the system" comment was posited on the assertion of *facts* which could be proven false. Presumably, Johnson could, for instance, produce evidence to show that Dr. Holstein billed for patients he did not see. Or she could have described in her declaration the inadequacies she observed in patient charts.

---

4      In the trial court, both respondents made a rather dubious and circular contention – because Dr. Holstein admitted Dr. Chen never reported him to Richards, any statement to Johnson claiming he had would not be a "statement of fact." For reasons that are surely self-evident, such an argument turns the entire tort of defamation on its head, and respondents were wise to omit it on appeal.

Or she could have set out whatever other facts led to her statement. She did not do so – she presented no evidence to suggest her assertions were true.

### B. Whether There Were Damages

The final ground put forth by Dr. Chen and Johnson for summary judgment is the weakest. "Where, as here, slanderous statements injure one with respect to his office, profession, trade or business . . . they are deemed slander per se. [Citation] Therefore, there need not have been any evidence of actual damages to support an award of compensatory damages." (*Hanley v. Lund* (1963) 218 Cal.App.2d 633, 644-645, disapproved on another ground in *Adams v. Murakami* (1991) 54 Cal.3d 105, 115-116.)

Dr. Chen and Johnson find this rule inapplicable because Dr. Holstein's pleading does not expressly label his cause of action "slander per se." This is a fundamental misapprehension of the law. "What is necessary to state a cause of action are the facts warranting legal relief, and not whether a plaintiff has provided apt, inapt, or no labels or titles for causes of action." (*Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1371.) Dr. Holstein alleged that the statements made by Dr. Chen and Johnson had a tendency to injure him in his profession, and a reasonable juror might agree, given adequate proof. That was enough.

Because Dr. Chen and Johnson failed to meet their moving burden on all three grounds for summary judgment, the motions should have been denied.

### IV. The Trial Court's Ruling

The trial court glossed over the moving parties' burden and instead focused on the Johnson testimony. Clearly, we diverge from the trial court on the former issue, but we feel compelled to address its ruling as to the latter, since the parties' briefs expend so much ink addressing it. Specifically, they contest whether the testimony was admissible and whether it substantively would have met Dr. Holstein's burden to show a triable issue of material fact. We answer in the affirmative on both counts.

12

### A. Admissibility

Evidentiary objections are deemed waived if not made prior to or at the hearing. (See Code Civ. Proc., § 437c, subds. (b)(5) & (d); Cal. Rules of Court, rule 3.1354, subd.(a).) Neither Dr. Chen nor Johnson filed evidentiary objections to any of the evidence submitted by Dr. Holstein in opposition to their motions. Nor did they raise any objections at the hearing. Rather, it was the trial judge who suggested the admissibility issue. This was error, and not just because the trial judge could have been perceived as intervening to preserve a waived objection.

The former testimony exception was not the proper one to apply to the Johnson testimony. It applies when a declarant is unavailable. (See Evid. Code, §§ 1290-1292.) In *L&B*, the declarant was a third party who had been prosecuted in connection with a robbery that was the subject of the case. (*L&B*, *supra*, 67 Cal.App.4th at p. 1345.) The court held trial testimony from the declarant was inadmissible because the proffering party had not shown the declarant to be unavailable, and the opposing party properly objected. (*Id.* at p. 1348.)

Neither of those conditions were met here. Indeed, the first could never be met as the declarant is Johnson, a party. She is not unavailable as a witness, as shown by the declarations she submitted in support of respondents' motions. And neither she nor Dr. Chen properly objected to the introduction of her former testimony.[5]

In any event, as Dr. Holstein's counsel correctly pointed out at the hearing in the trial court, the Johnson deposition testimony falls squarely within other hearsay exceptions. The testimony qualifies as a party admission, at least insofar as the testimony is being used against Johnson herself. (See Evid. Code, § 1220.) It also qualifies as a prior inconsistent statement under Evidence Code sections 1224 and 770. Johnson was not excluded from providing further testimony. (See Evid. Code, §770.) And her

---

[5] Thus, even if *L&B* remains good law after *Sweetwater* – a proposition now thrown into doubt – it is distinguishable.

13

deposition testimony certainly would appear inconsistent with her declaration.  (*Id.*, § 1224.)  "'"Inconsistency in effect, rather than contradiction in express terms, is the test for admitting a witness'[s] prior statement . . . ."'"  (*People v. Cowan* (2010) 50 Cal.4th 401, 462, quoting *People v. Johnson* (1992) 3 Cal.4th 1183, 1219.)  Here, as we outlined above, rather than serving as a "clarification," Johnson's declaration more resembles an attempt to get the toothpaste back into the tube from which it escaped at her deposition.

### B.  Sufficiency

 The trial court also believed the Johnson testimony offered by Dr. Holstein was insufficient to meet his opposing party burden because it was not "clear and unequivocal" in attributing statements to Dr. Chen or identifying statements of fact made to third parties, and Dr. Holstein's counsel did not clarify the testimony.  Again, we disagree.

Johnson readily admitted having told third parties Dr. Holstein was milking the system, and, as we have already explained, this was an assertion of fact.  Furthermore, reasonable inferences can be drawn from her testimony that Dr. Chen told her he had told the administration about Dr. Holstein.  ". . . [S]ummary judgment shall not be granted by the court based on inferences reasonably deducible from the evidence if contradicted by other *inferences* or evidence that raise a triable issue as to any material fact."  (Code Civ. Proc., § 437c, subd. (c).; italics added)  In faulting the Johnson deposition testimony for failing to be  "clear and unequivocal," the trial court contravened this rule.  The very fact that the testimony was not clear and unequivocal suggests the presence of multiple reasonable inferences. It fell to the trier of fact – not the trial court – to choose the most reasonable among them.

## DISPOSITION

The summary judgment is reversed. Dr. Holstein shall recover his costs on appeal.

BEDSWORTH, ACTING P. J.

WE CONCUR:

MOORE, J.

ARONSON, J.